681 P.2d 476

**MID–CENTURY INSURANCE COMPANY,**
**Plaintiff/Appellee,**

v.

**Julian SAMANIEGO and Carrie Carlson, Defendants/Appellants.**

**No. 2 CA–CIV 4887.**

Court of Appeals of Arizona,
Division 2.

April 13, 1984.

Slutes, Browning, Sakrison & Grant, P.C. by Philip H. Grant, Tucson, for plaintiff/appellee.

Miller & Pitt, P.C. by John L. Tully and Allen G. Minker, Tucson, for defendant/appellant Samaniego.

Carl M. Tootle, Tucson, for defendant/appellant Carlson.

## OPINION

HATHAWAY, Judge.

In this declaratory judgment action brought by Mid-Century Insurance Company, the trial court found that the liability insurance policy had been cancelled and did not cover a two-vehicle collision occurring on April 11, 1981. We reverse.

On April 11, 1981, Carrie Carlson drove her pick-up truck through a red light at the intersection of East 22nd Street and South 4th Avenue in Tucson and collided with Julian Samaniego's automobile. The gas tank on Samaniego's vehicle ruptured causing his automobile to burst into flames. Samaniego was severely injured in the crash.

On December 31, 1980, the motor vehicle liability insurance policy in question on this appeal was for her pick-up truck. The policy provided personal injury liability insurance coverage in the amount of $100,-000. The Declarations page of the policy provides the effective date of the policy is December 31, 1980, the expiration date is June 30, 1981, and renewals are provided for additional terms of six months. The

"MONTHLY PAYMENT AGREEMENT" endorsement provides:

"In consideration of the premium deposit, we agree to the following:

(1) The policy period is amended to one Calendar month. It will commence with the effective date shown in the Declarations.

(2) The policy shall continue in ˙force for successive monthly periods if the premium is paid when due. The premium is due no later than on the expiration date of the then current monthly period.

(3) The monthly premium shall be subject to future adjustment. Such adjustment will apply the then current rate on the semi-annual or annual anniversary of the policy whichever is indicated in the Declarations as applicable.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy."

Under this monthly payment plan, Ms. Carlson made an initial payment of $138.54 for the first two months of coverage. She made her first monthly premium payment in January 1981, and made no further premium payments. Thus, as of January 1981, she had paid for three months of coverage, i.e., from December 31, 1980, through March 31, 1981.

The trial court found that the notice of cancellation was sent to Ms. Carlson on or about March 16, 1981, and that there was no insurance in effect at the time of the April 11, 1981, automobile accident. The notice of cancellation was for non-payment of premium and gave March 31, 1981, as the final effective date of the policy. Although Ms. Carlson contends she did not receive a notice of cancellation, appellants do not challenge the trial judge's acceptance of Mid-Century's evidence that a notice of cancellation was sent. It is conceded that the notice need not have been received by the insured. *Government Employees Insurance Company v. Superior Court,* 27 Ariz.App. 219, 553 P.2d 672 (1976).

The crucial issue on appeal is, assuming notice was sent to Ms. Carlson on March 16, 1981, would the insurance policy have been effectively terminated before the accident occurred? Appellants argue that under the terms of the policy, 30 days' notice was required before coverage could be terminated. Mid-Century contends that only 10 days' notice was required. The trial court agreed with the latter contention. If the 30 days' notice was required, then the notice sent on March 16 would have become effective 30 days thereafter, and Ms. Carlson's coverage would still have been in force on April 11, 1981, when the accident occurred.

The notice provisions that are challenged in the policy appear in an endorsement called "AMENDATORY ENDORSE-MENT–ARIZONA." The pertinent portion of the endorsement provides:

"4. Sections a and b of Condition 3 'Termination or Reduction of Coverage' in Part V of this policy are replaced with the following: .

8. Termination or Reduction of Coverage

a. Cancellation or Reduction of Coverage

  *   *   *   *   *   *

(2) We may cancel, change the renewal date, or cancel or reduce all or any portion of any coverage by mailing notice to you at the address shown in the Declarations or by delivering the notice:

(a) Not less than 10 days prior to the effective date of such cancellation, reduction, or change of renewal date:

(i) for non-payment of premium.

(ii) if the policy has been in effect less than 60 days and is not a renewal policy.

(b) Not less than 30 days prior to the effective date of cancellation in all other cases.

If we cancel or reduce all or any portion of any Coverage, the notice we send will describe that portion we are cancelling or reducing."

We believe the foregoing language can legitimately be read two ways: (1) The policy can be cancelled with 10 days' notice if the premium has not been paid *or* for any other reason if the policy has not been in effect for 60 days and is not a renewable policy; (2) the policy can be cancelled with 10 days' notice if the premium has not been paid *and* the policy has not been in effect for 60 days and is not a renewable policy. The second interpretation would then take the policy out of the 10 days' notice category and place it in the 30 days' notice residuary clause, regardless of whether or not it is a renewable policy. Since the policy had been in effect since December 31, 1980, it had been in effect for more than 60 days on the date of the cancellation notice, i.e., March 16, 1981.

▮ Where a policy provision is subject to more than one reasonable interpretation, it is ambiguous and the ambiguity will be construed against the insurer. *Sparks v. Republic National Life Insurance Company*, 132 Ariz. 529, 647 P.2d 1127 (1982). An insurer desiring to limit its liability should do so in language clearly communicating that intent. In determining whether an ambiguity exists in the policy, it should be examined from the viewpoint of the layman. *State Farm Mutual Automobile Ins. Co. v. O'Brien*, 24 Ariz.App. 18, 535 P.2d 46 (1975). We cannot say that Ms. Carlson would not have been justified in believing that she would have received 30 days' notice before termination of her coverage. We therefore conclude that she must be found to have still been insured on April 11, 1981, the date of the collision.

▮ Mid-Century argues that if the policy is for a month at a time, it has been in effect for less than 60 days. This ignores the effective date of the policy indicated on the declaration page, i.e., December 31, 1980, and ignores the policy's continuous existence from that time for a period in excess of 60 days. We find the argument without merit.

Mid-Century also relies on the automatic termination provision found in condition 8(c), which provides:

"This policy will automatically terminate at the end of the policy period if you or your representative do not accept our offer to renew it. Your failure to pay the required renewal premium as we require means that you have declined our offer."

It is pointed out that nothing in the automatic termination paragraph requires any notice to cancel. However, having chosen the notice of cancellation route, Mid-Century cannot be permitted to retreat from that position to its insured's prejudice.

The case is reversed with directions that judgment be entered that pursuant to the terms of her insurance policy, Ms. Carlson was still insured on April 11, 1981. Appellants are awarded costs and attorneys fees.

BIRDSALL, C.J., and HOWARD, J., concur.