780 P.2d 428

Douglas J. SLETTEN, Jr., personal representative of the estate of Douglas J. Sletten, for said estate in its own right, and on behalf of Elmer Carmack, Carol Brooks, Sharon Conner, Charlotte Koen, Donna Delzer, Katherine Valdez, Rhonda Robertson, Donald Sletten, Kenneth Sletten and Douglas Sletten, Jr., and Elmer Carmack, Carol Brooks, Sharon Conner, Charlotte Koen, Donna Delzer, Katherine Valdez, Rhonda Robertson, Donald Sletten, Kenneth Sletten, and Douglas Sletten, Jr., individually, Plaintiffs/Appellees,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, Defendant/Appellant.

No. 2 CA–CV 88–0348.

Court of Appeals of Arizona, Division 2, Department A.

March 28, 1989.

Review Denied Oct. 11, 1989.

596

Langerman, Begam, Lewis and Marks by Samuel Langerman, and The Langerman Law Offices by Amy G. Langerman, Phoenix, for plaintiffs/appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith, George H. Mitchell and William J. Downey, Phoenix, for defendant/appellant.

## OPINION

LIVERMORE, Presiding Judge.

On August 3, 1982, while insured by Mutual Insurance Company of Arizona (MICA), Dr. Elden Robins failed to read an X-ray report for an X-ray which he had ordered for his patient, Mrs. Sletten. As a result he did not notice the presence of a possible cancerous growth. On September 7, 1982, Robins became insured by defendant St. Paul Fire and Marine Insurance Company. On August 2, 1984, Robins discovered the 1982 X-ray and ordered new X-rays. Mrs. Sletten was hospitalized with cancer and, shortly thereafter, died. Meanwhile, on September 7, 1984, Robins ceased being insured by St. Paul and once again became insured by MICA. The only issue on appeal is whether St. Paul's policy covers the admitted negligence of Dr. Robins.

The St. Paul policy was a "claims made" policy, providing coverage for negligence after 1976 when a claim was made during the term of the policy. The policy reads "A claim is made on the date you first report an incident or injury to us or our agent." Because the policy also stated that it protects the insured against "claims which might be brought against you," the trial court found the policy ambiguous by failing to distinguish between a "claim" as a right to recovery asserted by a patient against the insured doctor and a "claim" as a report of potential liability by the insured doctor to the insurer. Because we disagree with the trial court's conclusion and because if any ambiguity is resolved in the insured's favor there is still no right to recovery, we reverse.

When a policy is ambiguous, the ambiguity is to be construed against the insurer. *Sparks v. Republic National Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982); *Mid–Century Ins. Co. v. Samaniego*, 140 Ariz. 324, 681 P.2d 476 (App.1984). Whichever way "claim" is defined, however, results in an absence of coverage. If "claim" is treated as a formal claim by patient against doctor, there is no coverage because no such claim was made during the policy period. If "claim" is treated as a report of potential liability by doctor to insurer, there is no coverage because no such claim was made during the policy period. A finding of "ambiguity in the air," *see* 3 Harper, James & Gray, *Law of Torts* 655 (2d ed. 1986), is insufficient. The ambiguity must affect the rights of the insured.

We do not believe, however, that the policy is rendered ambiguous by the state-

ment that the policy protects against claims made by patients. The policy also states:

*When is a claim made?*

A claim is made on the date you first report an incident or injury to us or our agent. You must include the following information:

\* Date, time and place of the incident.

\* What happened and what professional service you performed.

\* Type of claim you anticipate.

\* Name and address of injured party.

\* Name and address of any witness.

The insured is as clearly informed as we believe possible that any known negligence likely to invite a claim against him is covered if reported. Because an insured will almost surely report formal claims against him, there is no real ambiguity.

The trial court also held against St. Paul because it failed "to unambiguously tell its policyholder that incidents must be reported and that he or she was covered for 'incidents' not amounting to a claim 'brought against' the insured. There is no reason to believe that Dr. Robins would have failed to report the August 2, 1984 incident to St. Paul had the policy unambiguously stated that he had to do so in order to retain coverage." Once again, we disagree. The language quoted in the preceding paragraph is quite clear. Dr. Robins found it so when asked on deposition. He did not report his potential liability because he did not believe the insurer would want to hear of it. Ambiguity cannot be so premised.

■ Appellees seek to uphold the judgment on the alternative ground that so long as St. Paul was not prejudiced by the late reporting, coverage should exist. *See Lindus v. Northern Ins. Co.*, 103 Ariz. 160, 438 P.2d 311 (1968); *Globe Indemnity Co. v. Blomfield*, 115 Ariz. 5, 562 P.2d 1372 (App.1977). That law was developed with respect to "occurrence" policies which provide coverage for negligent conduct occurring during the policy period regardless of when the claim is made. We find persuasive the reasoning in *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512 (Fla.1983):

Claims-made policies, likewise, require that notification to the insurer be within a reasonable time. Critically, however, claims-made policies require that notice be given *during the policy period* itself. When an insured becomes aware of any event that could result in liability, then it must give notice to the insurer, and that notice must be given "within a reasonable time" or "as soon as practicable"— at all times, however, during the policy period.

\*    \*    \*    \*    \*    \*

... Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially *reporting* policies.... If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This we cannot and will not do.

[Emphasis in original.] *See also Zuckerman v. National Union & Fire Ins. Co.*, 100 N.J. 304, 324, 495 A.2d 395, 406 (1985); *Stine v. Continental Casualty Co.*, 419 Mich. 89, 349 N.w.2d 127 (1984). We believe the *Dolan* rationale compelling on the facts of this case where Dr. Robins was offered, but declined, extended reporting coverage by St. Paul and was offered, but declined, retroactive coverage for prior negligence not resulting in a claim by his new insurer MICA.

Appellees urge us to follow California authority applying the late notice/prejudice rule to claims-made policies. *Northwestern Title Security Co. v. Flack*, 6 Cal. App.3d 134, 85 Cal.Rptr. 693 (1970). We decline to do so because the effect would be to convert claims-made policies into occurrence policies. In the absence of actual prejudice from late reporting, which also defeats coverage under an occurrence policy, all negligence during the policy period would be covered. We discern no public policy that mandates that only occurrence

coverage be sold in Arizona. This appears especially so where coverage protective of Dr. Robins was offered by both St. Paul and MICA and refused by him.

Finally, appellees seek to sustain the judgment by claiming that the policy language that protection is afforded against "claims which might be brought against you" is ambiguous as to the time at which the claim must be made. For this proposition they cite *Gyler v. Mission Ins. Co.,* 10 Cal.3d 216, 110 Cal.Rptr. 139, 514 P.2d 1219 (1973), where the court found that that language could refer to claims actually filed or to any incidents that could have resulted in claims. Whatever the merits of that interpretation, we find no ambiguity in the St. Paul policy where the insured is clearly told that the claim must be made "while this agreement is in effect" and then, in language we quoted earlier, told precisely how to make a claim whether it be for an actual or potential claim by an injured patient. To find ambiguity here is simply to take leave of ordinary understanding in order to afford coverage.

Reversed.

HATHAWAY and HOWARD, JJ., concur.