951 F.2d 362
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SKANDIA AMERICA REINSURANCE CORPORATION, A Delaware
Corporation, as subrogee of The Joint Underwriting
Plan of Arizona,
Plaintiff-counter-defendant-Appellant
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota
Corporation, Defendant-counter-claimant-Appellee.
 No. 90-15994.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1991.
Decided Dec. 24, 1991.
 
 Before GOODWIN, SCHROEDER and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Skandia America Reinsurance Company ("Skandia") appeals a summary judgment in favor of St. Paul Fire and Marine Insurance Company ("St. Paul") in a dispute over which carriers should contribute toward a $2.2 million medical malpractice settlement.
 
 
 3
 The dispositive issue is the time when St. Paul's coverage became effective with respect to the claim that was settled.
 
 
 4
 On January 3, 1980, Dr. Samuel Pozner delivered a baby to Robert and Maria Castillo. The baby was born with microcephaly and was later diagnosed as being mentally retarded. Dr. Pozner was employed by the Group Health Medical Association (GMHA). Shortly after the baby's birth, the Castillos indicated to GMHA that a lawsuit was possible. At that time, Dr. Pozner and GMHA were insured against medical malpractice by the Mutual Insurance Company of Arizona ("MICA"). More than two years later, on December 22, 1982, the Castillos filed suit. By that point, St. Paul and replaced MICA as Dr. Pozner and GMHA's primary insurer.
 
 
 5
 When the Castillos filed suit, GMHA sent copies of the complaint to St. Paul. St. Paul informed GMHA that MICA was responsible for the Castillo lawsuit and St. Paul denied coverage. On March 30, 1984, the Castillo lawsuit was settled for $2.2 million. MICA contributed $200,000. The remaining $2 million was paid by Skandia which was MICA's reinsurer. St. Paul did not contribute toward or participate in the Castillo settlement.
 
 
 6
 In June of 1982, during the negotiations over its policies with Dr. Pozner and GMHA, St. Paul had requested that GMHA compile a list of incidents which GMHA had previously reported to other carriers and which could result in a later lawsuit. After the St. Paul policies were in force (July 1, 1982), St. Paul received the list. Included on that list was the Castillo incident.
 
 
 7
 In December of 1986, Skandia brought this declaratory judgment action against St. Paul seeking a declaration that under St. Paul's insurance policies with Dr. Pozner and GMHA, St. Paul was required to provide primary insurance coverage for the Castillo lawsuit. Both sides moved for summary judgment and the district court granted St. Paul's motion.
 
 
 8
 I. "Claims Made"
 
 
 9
 The dispute in this case concerns the meaning of one clause from St. Paul's policy with GMHA and Dr. Pozner. The clause reads:
 
 When You're Covered
 
 10
 To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies. The claim must also first be made while this agreement is in effect.
 
 
 11
 Because GMHA and Dr. Pozner's treatment of baby Castillo was performed after the St. Paul policy's retroactive date, the only dispute is over whether the "claim" was "first made" during the policy period.
 
 
 12
 Skandia's principal argument on appeal is that the term "claim" is ambiguous. Skandia argues that "claim" refers to either the claim made by a third party against the insured, or to the claim made by the insured against the insurer in seeking coverage. Under the first interpretation, Skandia further argues that the Castillos had made no "claim" against Dr. Pozner and GMHA until the Castillos filed suit in December, 1982. Accordingly, the Castillo lawsuit represents a "claim first made" during the St. Paul policy period and hence is covered.
 
 
 13
 The problem with Skandia's argument is that the term "claim" as it is used in the "When You're Covered" clause is not ambiguous. It refers to claims made by the insured against the insurer, and not to third-party claims against the insured. Immediately following the "When You're Covered" clause is the following clause:
 
 
 14
 When is a claim made?
 
 
 15
 A claim is made on the date you first report an incident or injury to us or our agent. You must include the following information:
 
 
 16
 * Date, time and place of the incident
 
 
 17
 * What happened and what professional service you performed
 
 
 18
 * Type of claim you anticipate
 
 
 19
 * Name and address of injured party
 
 
 20
 * Name and address of any witness
 
 
 21
 By specifically defining the phrase "claim made" immediately after it appears for the first time, the policy makes clear which meaning of "claim" it is using in the "When You're Covered" clause. Under the policy, a claim is made when "you first report an incident or injury to us." It follows, then, that a claim is made by the insured reporting an incident or injury to St. Paul for the first time.
 
 
 22
 The same conclusion concerning the identical policy language was reached by the Arizona Court of Appeals in Sletten v. St. Paul Fire and Marine Ins. Co., 780 P.2d 428 (Ariz.App.1989). That case also involved the interpretation of the "When You're Covered" clause. The Sletten court found, as we do, that "claim made" as used in the "When You're Covered" clause refers to claims made by the insured against the insurer and not to third-party claims. Id. at 429-430. Noting that Arizona state law applies in this case, we see no reason to disagree with the reasoning of the Sletten court.
 
 
 23
 Although "claim made" is unambiguous in the St. Paul policy, the same cannot be said for the phrase "claim first made." Because GMHA reported the Castillo lawsuit to St. Paul in December 1982, the "claim" was indeed "made" during the policy period as required by the policy in order for coverage to attach. The issue in this case is whether the claim was "first made" during the policy period.
 
 II. Concurrent Coverage
 
 24
 In deciding whether St. Paul's policy provided primary coverage for the Castillo lawsuit, the district court looked principally at whether MICA's policy with GMHA and Dr. Pozner covered the Castillo lawsuit. The court's unstated assumption was that St. Paul's policy did not provide concurrent primary coverage. The court also reasoned that reading St. Paul's policy as providing concurrent primary coverage would defeat St. Paul's reasonable expectations in entering into the insurance agreement with GMHA and Dr. Pozner. The district court's analysis overlooked the key factor: the St. Paul policy itself.
 
 
 25
 Skandia does not deny that the MICA policy provided primary coverage for the Castillo lawsuit. Instead, it argues that the St. Paul policy also provided primary coverage for the lawsuit. This state of affairs is not unusual and is provided for by "other insurance" clauses. Skandia points out that the St. Paul policy contains no exclusion which prevents it from providing concurrent coverage for the Castillo lawsuit. Such an exclusion is contained, for example, in the MICA claims-made policy which the district court so closely scrutinized: "Coverage under this Agreement excludes liability arising out of any Occurrence ... [c]overed by any other insurer." By contrast, the St. Paul policy reads:
 
 
 26
 If you have other professional liability insurance
 
 
 27
 A professional liability loss that's covered under this agreement may also be covered under other insurance you have. If it is, we'll pay that portion of your loss which the limits of your coverage under this agreement are of the total of all limits that apply. But we won't pay more that the limits of the coverage under this agreement.
 
 
 28
 By its express language, the St. Paul policy assumes situations in which St. Paul will provide coverage concurrent with other insurers. It goes so far as to present a formula for calculating St. Paul's proportionate share of the concurrent coverage.
 
 
 29
 St. Paul's omission of an express exclusion for concurrent coverage resulted from a marketing decision. The policy in this case evolved from an earlier version. That version had contained an express exclusion for losses which were covered "in whole or in part" by any other insurance. According to the draftsman of the policy at issue here, the express exclusions were removed "[b]ecause it's always really nice to come in and say we have an exclusion-free policy. This is a nice marketing arrangement without any change." That St. Paul's choice to leave out an express exclusion to deny concurrent coverage created a "nice marketing arrangement" may well be. Whether that omission accomplished this "without any change" to previous language denying concurrent coverage is what this dispute is about.
 
 
 30
 St. Paul insists that the "claim first made" language effectively creates an exclusion for concurrent coverage. St. Paul argues that because GMHA had reported the Castillos' murmurings of unrest to MICA in 1980, the claim which GMHA made upon St. Paul in December 1982 after the Castillos had filed suit was not first made with St. Paul. Hence, St. Paul asserts that the Castillo suit was not covered by the policy. However, this interpretation represents only one of at least three possible readings of "claim first made."
 
 
 31
 The first possible reading of "claim first made" tracks the language of the policy closely. Under the policy, a claim is made "on the date [the insured] first report[s] an incident ... to [St. Paul]." Thus, a claim is made once the insured makes a report to St. Paul. However, the policy will provide coverage only if "[t]he claim [is] first ... made while [the] agreement is in effect." This condition implies that if an insured had reported an incident to St. Paul before the current policy had taken effect, coverage would be denied whether or not the insured reports the incident during the current policy period. This limitation would come into play if the insured had previously been covered by St. Paul under an earlier policy. The condition would prevent an insured from taking advantage of the terms of the current policy by re-reporting an incident which the insured had initially reported to St. Paul pursuant to the earlier policy. That neither Dr. Pozner nor GMHA had previously been covered by St. Paul does not defeat this interpretation. As Sletten and other cases indicate, the same language was used in St. Paul's policies with other insureds. Oft-used forms might well contain conditions which are relevant only for some parties. Under this reading, St. Paul was required to provide coverage for the Castillo lawsuit because the first time GMHA reported the Castillo claim to St. Paul was during the policy period.
 
 
 32
 The second possible reading of "claim first made" is the one proposed by St. Paul. Under this interpretation, the phrase should be read so as not to limit "claim made" to claims against St. Paul; it should also refer to claims made against other carriers. There are a number of difficulties with this argument. First, this interpretation contradicts the policy's own definition of "claim made"--the reporting of an incident to St. Paul. Second, the policy is silent on which insurer's definition of "claim made" should be used. If St. Paul's definition is used, and an insured's previous actions constitute a "claim made" under St. Paul's policy but do not trigger coverage under the other carrier's policy, then there will be no coverage, not merely a failure of concurrent coverage. This result is rather overbroad if the word "first" was inserted into the "When You're Covered" clause simply to deny concurrent coverage. Finally, a flat denial of concurrent coverage is contradicted by the implications of the "other insurance" clause. This is not a clause found in finely printed boilerplate at the back of a thick agreement. It appears, typed in ordinary size, on the second page of a 2-page document.
 
 
 33
 Under a third possible reading, the word "first" relates to the purpose of the "When You're Covered" clause. That clause introduces the two preconditions for coverage. Insertion of the word "first" could emphasize the fact that there are two preconditions, not merely one. In other words, even if the underlying insurable incident had occurred after the retroactive date, before the insured can be covered by the policy the insured must first report the incident to St. Paul. Under this construction, the term "first" serves to impress upon the insured the importance of reporting incidents to St. Paul. Failure to do so will result in dire consequences: coverage will be denied. That a claims-made policy would be written to emphasize this is not unlikely because the occurrence/reporting distinction reflects the key difference between the old "occurrence" policies, and the newer "claims-made" policies. Under this reading, the policy required St. Paul to cover the Castillo lawsuit because GMHA did indeed report the lawsuit to St. Paul during the policy period.
 
 
 34
 Under Arizona law, a finding of ambiguity in the meaning of an insurance clause does not end the analysis. The expectations of the parties must be discerned. Because this is a dispute between the reinsurer and the alleged primary insurer, the actual intentions of the parties to the St. Paul policy are irrelevant. Dr. Pozner and GMHA are not before this court. State Farm Mut. Auto. Inc. Co. v. Bogart, 717 P.2d 449, 454-455 (Ariz.1986). Instead, this court must determine the reasonable expectations of the parties to the policy. State Farm Mut. Ins. Co. v. Wilson, 782 P.2d 727 (Ariz.1989). Such an analysis must consider "the purpose of the clause in question, public policy considerations, and the purpose of the transaction as a whole." Id.
 
 
 35
 The purpose of the "When You're Covered" clause is to set out the preconditions for coverage under the policy. Because this dispute is about the meaning of one those conditions, the first Wilson factor does not help in the analysis.
 
 
 36
 Second, St. Paul points to no public policy against concurrent coverage. Indeed, the "other insurance" clause of its agreement with Dr. Pozner and GMHA presupposes the possibility of concurrent coverage. Thus, the second Wilson factor does not help.
 
 
 37
 In the final analysis, this dispute comes down to the reasonable expectations of the parties, viewing the transaction as a whole. St. Paul's principal arguments concern the meaning that the insurance industry ascribes to "claim first made," and the fact that, during the negotiations for the GMHA policy, St. Paul had requested that GMHA send it the listing of prior-reported incidents.
 
 
 38
 The problem with these arguments is that they ignore the expectations of the insured. The policy with GMHA and Dr. Pozner was brief and is written in a style which invites the reader to expect that ordinary meanings apply to the words. The policy tells the reader that "you're covered when a claim is first made during the policy period." Because "claim made" might be ambiguous, the policy further informs the reader that a "claim is made when you first report an incident to us." Arguing that insurance industry buzzword definitions should apply to "claim first made" is unreasonable in light of how this agreement was written.
 
 
 39
 Moreover, the presence of the "other insurance" clause contradicts the argument that the policy denies concurrent coverage. Nowhere does the policy explicitly exclude coverage for prior-reported incidents. St. Paul does not claim that it informed GMHA that the requested list of prior-reported incidents represented claims which St. Paul would not cover. Instead, it argues that GMHA believed this to be true. This assertion is belied by the testimony of the GMHA officials. Moreover, that the contrary is true is demonstrated by the fact that once the Castillos filed suit, GMHA first reported the suit to St. Paul, and not MICA. It was only after St. Paul denied coverage that GMHA dealt with MICA.
 
 
 40
 Actual behavior is probative as to whether the expectations were reasonable. It is not surprising that GMHA first reported the lawsuit to St. Paul in light of the fact that the St. Paul policy goes so far as to set out a formula for computing St. Paul's share of concurrent coverage. Were we to conclude that "claim first made" has the effect of denying concurrent coverage, we would be holding that it is reasonable for an insured to expect that his insurer will deceive him as part of its marketing strategy. This we decline to do.
 
 
 41
 St. Paul's policies with Dr. Pozner and GMHA provided concurrent primary coverage for the Castillo lawsuit.
 
 
 42
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3