**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff–Appellant,**

**v.**

**ESTATE OF John R. HUNT, M.D., Defendant–Appellee.**

No. 89CA1932.

Colorado Court of Appeals, Div. V.

March 14, 1991.

Rehearing Denied April 11, 1991.

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.*, art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Cooper & Kelley, P.C., Frank R. Kennedy, John R. Mann, Denver, for plaintiff-appellant.

Miller & McCarren, P.C., William J. McCarren, Denver, for defendant-appellee.

Opinion by Judge JONES.

In an action for declaratory judgment, plaintiff, St. Paul Fire and Marine Insurance Company (St. Paul), appeals from a judgment determining that it had a duty to provide coverage for a medical malpractice claim and was obligated to pay post-judgment interest from the date a default judgment was entered. We reverse.

John R. Hunt, M.D., practiced medicine until July 1983 when he surrendered his license, retired, and purchased a "claims-made" professional liability insurance policy from St. Paul. The policy provided coverage for claims made from 1983 through July 29, 1986, regardless of when the acts or omissions giving rise to any such claim occurred. The policy specifically and unambiguously states that in order to be covered, a claim must "be made while this agreement is in effect." Additionally, the policy answered the question, "When is a claim made?" as follows:

> "A claim is made on the date you first report an incident or injury to us or our agent. You must include the following information:
>
> "Date, time and place of the incident.
> "What happened and what professional service you performed.
> "Type of claim you anticipate.
> "Name and address of injured party.
> "Name and address of any witness."

A patient of Dr. Hunt filed a medical malpractice claim against him on August 29, 1985. Dr. Hunt was served in that case that same month. Because he failed to answer the complaint, a default judgment was entered against the doctor on April 17, 1987, in the amount of $250,000.

That patient's claim was not reported to St. Paul until July 1987, and it denied coverage because notice of the claim had not been given to it until after the policy had expired.

Dr. Hunt died on February 28, 1988. On August 23, 1988, St. Paul brought this declaratory judgment action requesting that the court declare that no coverage exists as to the medical malpractice claim here at issue. Lenore Hunt, as the personal representative of Dr. Hunt's estate, answered the complaint and in that answer alleged, *inter alia*, that Dr. Hunt's failure to provide notice was "excused as a result of [his] infirmity and incapacity...."

During Dr. Hunt's life he was not adjudicated an incompetent or incapacitated person, nor was a conservator or guardian ever appointed to tend to his affairs. Nevertheless, at trial of this declaratory judgment action, the jury determined that Dr. Hunt was unable to give notice of the

claim in question to St. Paul during the period of August 1985 to July 29, 1986, because of a mental impairment. The jury also found that his inability to give notice of the claim was not reasonably foreseeable to Dr. Hunt at the time he purchased the policy.

Based upon these findings, together with facts stipulated by the parties, the trial court declared that coverage by St. Paul did exist for the patient's claim to the policy limits. The court further found that St. Paul was liable for post-judgment interest on that amount from the date of judgment and, finally, that St. Paul was liable for the reasonable attorney fees incurred by the estate in defending the lawsuit. This appeal followed.

St. Paul contends that Dr. Hunt's mental impairment does not excuse non-compliance with the notice provision of the policy. Specifically, it contends that under a claims-made policy such as at issue here, the insured's duty to provide notice of a claim is a material condition precedent to coverage and that impossibility or impracticability of performance does not excuse the failure to comply with such a condition. We agree.

■ In general contract law, a condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due. Restatement (Second) of Contracts § 224 (1979); see Ashburn v. Safeco Insurance Co., 42 Wash.App. 692, 713 P.2d 742 (1986).

■ Impracticability excuses the non-occurrence of a condition *if the occurrence of the condition is not a material part of the agreed exchange* and forfeiture would otherwise result. Restatement (Second) of Contracts § 271 (1979); see Sagamore Corp. v. Diamond West Energy Corp., 806 F.2d 373 (2d Cir.1986).

Thus, the dispositive issue in this case is whether the condition requiring notice under this policy was a "material part of the agreed exchange."

To resolve that issue, we must consider the distinction between traditional "occurrence" insurance policies and the "claims-made" insurance policy at issue here and, specifically, the differing role that notice plays concerning each.

A fundamental distinction between the two types of policies is the peril insured against by each. One commentator has noted:

"In the 'occurrence' policy, the peril insured [against] is the 'occurrence' itself. Once the 'occurrence' takes place, coverage attaches even though the claim may not be made for some time thereafter. [However, as to a] 'claims-made' policy, it is the *making of the claim* which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place." (emphasis added)

Kroll, *The Professional Liability Policy "Claims Made"*, 13 Forum 842 at 843 (1978) (*quoted in Insurance Corp. of America v. Dillon, Hardamon & Cohen*, 725 F.Supp. 1461 (N.D.Ind.1988)). *See also James J. Brogger & Associates, Inc. v. American Motorists Insurance Co.*, 42 Colo.App. 464, 595 P.2d 1063 (1979).

Another commentator, highlighting the importance of the notice provision of a claims-made policy, has stated:

"It may be more accurate to characterize a 'claims made' policy as a 'claims made and reported' contract. Even that description is incomplete because coverage is actually conditioned on disclosure of facts which *may result* in a claim." (emphasis in original)

Campbell, *The Claims Made Policy—A Trap For the Unwary Lawyer?*, 18 Colo. Law. 1121 (June 1989). *See Sparks v. St. Paul Insurance Co*, 100 N.J. 325, 495 A.2d 406 (1985).

Therefore, the requirement of notice in an "occurrence" policy is subsidiary to the event that invokes coverage. By contrast, the event that invokes coverage under a "claims-made" policy is the transmittal of notice of the claim to the insurance carrier. *Zuckerman v. National Fire Insurance Co.*, 100 N.J. 304, 495 A.2d 395 (1985). The language of the clause which defines when a claim is made in the policy here conforms to the general rule set forth in the comments and the cases.

Thus, in a "claims-made" policy, the notice provision provides a certain date after which an insurer knows it no longer is liable under the policy and, accordingly, allows the insurer to fix more accurately its reserves for future liabilities and compute premiums with greater certainty. *City of Harrisburg v. International Surplus Lines Insurance Co.,* 596 F.Supp. 954 (M.D.Penn.1984), *aff'd,* 770 F.2d 1067 (3d Cir.1985). Defendant does not dispute that this allows insurers to offer the insurance for a substantially lower cost than occurrence policies. *See* Parker, *The Untimely Demise of the "Claims Made" Insurance Form? A Critique of Stine v. Continental Casualty Company,* 1983 Det.C.L.Rev. 25 at 73 (1983).

It is because of this significant role of notice in "claims-made" policies that numerous courts have held that excusing a delay in notice beyond the policy period should not be done, because to do so would alter a basic term of the insurance contract which expresses the parties' agreement. *City of Harrisburg, supra* (claims made coverage exists under Pennsylvania law only when claim is timely reported); *Zuckerman, supra* (extension of notice period in claims-made policy constitutes an unbargained-for expansion of coverage, *gratis,* resulting in substantially broader risk to insurer); *Civic Associates, Inc. v. Security Insurance Co.,* 749 F.Supp. 1076 (D.Kan. 1990) (allowing notice beyond the policy period would alter a basic term of the contract). *But see Sherlock v. Perry,* 605 F.Supp. 1001 (E.D.Mich.1985) (if notice is given within reasonable time, and insurer suffers no prejudice by the delay, coverage under claims-made policy exists under Michigan law).

■ Here, we conclude that the condition requiring the insured to provide notice of a claim during the policy period was a material part of the agreed exchange. Therefore, impracticability cannot serve as an excuse for the non-occurrence of such a material condition. *See Sagamore Corp. v. Diamond West Energy Corp., supra.* Thus, the trial court erred.

We are not unmindful of the traditional rule that failure to give timely notice to an insurer will not relieve the insurer from liability under the contract if the insured has a justifiable excuse. *See Certified Indemnity Co. v. Thun,* 165 Colo. 354, 439 P.2d 28 (1968); *Graton v. United Security Insurance Co.* 740 P.2d 533 (Colo.App. 1987); *cf. Marez v. Dairyland Insurance Co.,* 638 P.2d 286 (Colo.1981). We are also aware that other jurisdictions have specifically recognized mental incapacity as a justifiable excuse for untimely notice. *Woodmen's Accident Ass'n v. Byers,* 62 Neb. 673, 87 N.W. 546 (1901); *see generally* cases cited at 44 Am.Jur.2d *Insurance* § 1337 (1982) (fn. 84). However, this rule has been applied only to traditional occurrence policies, and we believe that the unique role of notice in a "claims-made" policy warrants a different result here.

In light of our resolution of this issue, we need not address St. Paul's other contentions regarding prejudice from the delay and post-judgment interest.

The judgment is reversed, and the cause is remanded for entry of judgment declaring that St. Paul's policy did not provide coverage for the claim at issue.

HUME and REED, JJ., concur.