Mae M. HASBROUCK and Richard
L. Hasbrouck, Appellants,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Appellee,

and

Narong Jarasviroj, M.D., P.C., A Profes-
sional Corporation; and Narong Jarasvi-
roj, An Individual, Defendants.

No. 93–140.

Supreme Court of Iowa.

Dec. 22, 1993.

Marc A. Humphrey and James R.
McCreight, Humphrey & Haas, P.C., Des
Moines, for appellants.

Roy M. Irish and Robin L. Hermann, Pat-
terson, Lorentzen, Duffield, Timmons, Irish,
Becker & Ordway, Des Moines, for appellee.

Considered by HARRIS, P.J., and
LAVORATO, NEUMAN, SNELL, and
ANDREASEN, JJ.

LAVORATO, Justice.

A patient and her spouse brought this
declaratory judgment action against her

treating physician, his professional corporation, and his insurance company. The purpose of the suit was to determine coverage under a "claims made" policy for the doctor's alleged negligence in treating the patient. The policy covered all claims first made during the policy period and required the insured to report such claims to the insurer within such period. The patient and her spouse sued the doctor on the patient's tort claim within the policy period, but the doctor failed to report the suit to his insurer until after the policy had lapsed. In sustaining the insurer's summary judgment motion, the district court ruled that notice of the suit to the doctor was not notice to his insurance company within the meaning of the policy. Based on this ruling, the district court determined there was no coverage for the patient's tort claim against the doctor and dismissed the declaratory judgment action. We affirm.

## I. *Background Facts and Proceedings.*

The facts are undisputed. St. Paul Fire and Marine Insurance Company issued a medical liability insurance policy to Narong Jarasviroj, M.D., P.C., and Narong Jarasviroj in his individual capacity. Coverage under this "claims-made" policy began September 23, 1985, the retroactive date under the policy. The policy was written upon a six-month basis and was renewed semiannually until September 23, 1990.

Around October 3, 1990, St. Paul mailed Jarasviroj a standard notice of cancellation for nonpayment of premium. The notice stated that (1) the premium payment on the policy was past due, and (2) the policy would be canceled October 23, (3) unless the company received the premium by that date. Jarasviroj made no premium payment.

On November 15, 1990, St. Paul sent Jarasviroj a letter at his home. The letter informed him that his policy had expired on October 23. The letter went on to say:

This is a "claims-made" form of coverage. This means that you will not have coverage for claims arising out of ·acts performed *prior* to the termination date for which a claim may be made *after* the termination date, unless you purchase reporting endorsement coverage.

Within *30 days* of the termination date of your policy, you may purchase at additional cost a Reporting Endorsement as provided in the terms of your policy. This endorsement extends the time in which a claim may be made for acts which occurred before the termination date.

Jarasviroj received the letter but did not accept the offer to purchase.

On August 31, 1990—a month before the policy expired—a former patient of Jarasviroj, Mae M. Hasbrouck, filed a medical malpractice action against him. The petition alleged that Jarasviroj was negligent in performing a colonoscopy procedure on her some two years earlier. Hasbrouck's husband joined in her suit.

Jarasviroj did not report the lawsuit to St. Paul. Instead, he hired an attorney to represent him. The attorney filed an answer on September 10. On December 6—after the policy had expired—the attorney wrote St. Paul a letter informing it of the suit and seeking coverage for the Hasbroucks' claims.

Several weeks later, in a letter to the attorney, St. Paul denied coverage and a duty to defend, giving these reasons:

In order to trigger coverage under the above said policy, there are two points that must be followed:

1. *To be covered, the professional service must be performed (or should have been performed) after your retro date (9–23–85).*

2. The claim must also first be made while this agreement is in effect. The policy goes on to say that: "A claim is made on the date you first report an incident or an injury to us or our agent."

The doctor failed to report the claim to us or our agent while his policy was in effect.

A year later the Hasbroucks brought the present declaratory judgment action against St. Paul, Jarasviroj's professional corporation, and Jarasviroj personally. The lawsuit seeks a ruling as to whether St. Paul has a duty to defend and indemnify the professional corporation and Jarasviroj against the

Hasbroucks' medical malpractice suit against Jarasviroj.

After the declaratory judgment action was filed, both sides filed motions for summary judgment. Jarasviroj joined in and supported the Hasbroucks' motion.

The district court overruled the Hasbroucks' motion and sustained St. Paul's motion, concluding there was no coverage. In the same ruling, the district court dismissed the Hasbroucks' petition.

The Hasbroucks appealed.

## II. *Standard of Review.*

Our review is for errors at law. *See* Iowa R.App.P. 4. On appeal of a summary judgment ruling, we must decide (1) whether a genuine issue of material fact exists, and (2) if the law was correctly applied. No fact question exists if the only dispute concerns the legal consequences flowing from undisputed facts. In such circumstances summary judgment is proper. *Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.,* 495 N.W.2d 723, 726 (Iowa 1993). Here the facts are undisputed. Our only task is to interpret the policy. Interpretation is a legal question unless the interpretation depends on extrinsic evidence. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). Here there is no extrinsic evidence; only the terms of the policy are involved. So summary judgment is appropriate.

## III. *Coverage.*

As they did in the district court, the Hasbroucks contend that notice of a claim to the insured—as opposed to the insurer—is enough to trigger coverage under a "claims made" policy. Because they sued Jarasviroj while the policy was in effect, the Hasbroucks think this was enough to trigger coverage for their claims. At the very least, the Hasbroucks say—as they said in the district court—the policy is ambiguous as to the reporting requirement and for that reason the language should be interpreted in their favor. For reasons that follow we reject both contentions.

A. *"Claims made" policy versus "occurrence policy."* Today insurance companies offer two types of policies in the professional liability field: the "claims made" (or "discovery") policy and the "occurrence" policy. Note, *The "Claims Made" Dilemma in Professional Liability Insurance,* 22 U.C.L.A.L.Rev. 925, 925 (1975). Our analysis requires an understanding of the differences between the two.

The "claims made" policy provides coverage for any errors, including those made before the effective date of the policy, as long as a claim is made within the policy period. *Id.* at 925–26. In contrast, the "occurrence" policy provides coverage for any acts or omissions that arise during the policy period, regardless of when claims are made. *Id.* at 926.

According to one writer, at one time the insurance industry offered professional liability coverage only on an "occurrence" basis. This was so because most familiar policies like automobile and general liability were written on this basis. Allegedly unprofitable results with professional liability "occurrence" coverage led to the birth and growth of "claims made" policies in the professional liability field. *Id.*

There are advantages and disadvantages to both the insured and insurer involving the "claims made" policy and the "occurrence" policy. As to the "claims made" policy, the obvious benefit to the underwriter is that there is no open-ended "tail" after the expiration date of the policy. The benefit stems from the fact that

> [a]n underwriter who is secure in the fact that claims will not arise under the subject policy long after its termination or expiration can underwrite a risk and compute premiums with greater certainty. The insurer can establish his reserves without having to consider the possibilities of inflation beyond the policy period, upward-spiralling jury awards, or later changes in the definition and application of negligence.

*Id.* at 928.

In contrast, the "occurrence" policy has a "tail" that extends beyond the policy period. The "tail" is the lapse of time between the date of the incident giving rise to liability and the time when a claim is made. This results

in less certainty in computing premiums. For example, insurers writing "occurrence" professional liability policies must compute premiums at current rates even though claims may become highly inflated long after the premiums cease to be paid. So the premiums the insurer receives may end up being inadequate against future claims that may be inflated. *Id.* at 928–29.

"Claims made" policies, however, also have disadvantages for the insurer. For example, such policies cover acts performed before the effective date of the policy. "Occurrence" policies in contrast provide coverage only for acts occurring during the policy period. The difference has been illustrated this way:

> If a policyholder has practiced his profession for 39 years and obtains insurance for his fortieth year under an "occurrence" policy, his insurer's exposure is limited to year 40 only; whereas, if it were a "claims made" policy written in the fortieth year, it could cover any malpractice back to year one.

*Id.* at 929.

From an insured's standpoint, the "claims made" policy offers two special advantages: coverage for acts prior to the effective date of the policy and lower premiums. The "occurrence" policy provides no such coverage and, because of the uncertainty, costs more. *Id.*

A disadvantage of the "claims made" policy becomes apparent in a professional's final year of practice. The policy provides no coverage for errors in the last year unless claims are made during the policy period. To cover this situation, the insurer offers a form of "claims made" coverage to cover the time after the professional retires. This is known as "prior acts" coverage and is usually offered at a reduced premium because the liability exposure decreases with each year and no new periods are introduced. *Id.* at 930–31. In contrast, the professional with the "occurrence" policy has coverage for any errors during that last year and so has no need to procure additional insurance each year. *Id.* at 931.

■ Statutes of limitation modify the characteristics of both forms of coverage. Differ-ences may occur depending upon whether a jurisdiction follows the negligence or discovery rule. Under the negligence rule, the statute of limitations begins to run when the negligence occurs. The statute of limitations under the discovery rule begins to run when the injured party discovers the cause of action. The negligence rule limits the insured's exposure under both "claims made" and "occurrence" policies. In contrast, the discovery rule expands liability and coverage under both types of policies. *Id.* at 931–33.

■ B. *The reporting requirement: What does it mean and is it ambiguous?* Against this background we turn to the policy in question. It is clearly a "claims made" policy. The coverage summary that is attached to the policy so describes it:

> This Coverage Summary shows the limits and extent of coverage under your Physicians' Professional Liability Protection— Claims–Made.

The reporting language in the policy is central to the district court's ruling. It provides:

> **When you are covered.**
>
> *To be covered* the professional service must have been performed (or should have been performed) after your retroactive date that applies. *The claim must also first be made while this agreement is in effect.*
>
> **When is a claim made?**
>
> *A claim is made on the date you first report an incident or injury to us or our agent.* You must include the following information:
>
> Date, time and place of the incident.
>
> What happened and what professional service you performed.
>
> Type of claim you anticipate.
>
> Name and address of injured party.
>
> Name and address of any witness.

(Emphasis added.)

Like the district court, we think the italicized language plainly and unambiguously requires that the insured report a claim *to the insurer* while the policy is in effect. Such a report to the insurer within the policy period is a prerequisite to coverage.

Here the alleged negligence upon which the Hasbroucks' suit is based occurred while Jarasviroj's policy with St. Paul was still in effect. But Jarasviroj did not report the suit to St. Paul until *after* the policy expired. The report was too late to trigger coverage.

At first blush the result seems harsh because there was no apparent prejudice to St. Paul. The suit was filed during the policy period and Jarasviroj's attorney filed an answer. But our conclusion is consistent with the purpose and characteristics of a "claims made" policy we earlier discussed. As one court explained in rejecting a no prejudice argument,

the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed.

By contrast, the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Obviously, such an expansion in the coverage provided by "claims made" policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of "claims made" insurance. So material a modification in the terms of this form of insurance widely used to provide professional liability coverage both in this state and throughout the country would be inequitable and unjustified.

*Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 324, 495 A.2d 395, 406 (1985).

The reason courts require an insurer of an occurrence policy to show prejudice from a late notice is because the purpose of the notice provision in such a policy is to give the insurer time to investigate the claim for defense or settlement purposes. When a late notice does not frustrate such a purpose, most courts will deem the notice provision waived. The "claims made" policy reporting provision serves a different purpose. It provides a certain date after which an insurer knows that it is no longer liable under the policy. So the insurer can more accurately fix its reserves for future liabilities and compute premiums with greater certainty. *City of Harrisburg v. International Surplus Lines Ins. Co.*, 596 F.Supp. 954, 962 (M.D.Pa. 1984) (Mem.). Prejudice for a late report of a claim in a "claims made" policy is therefore not an appropriate inquiry because such a consideration would defeat the fundamental concept on which "claims made" policies are premised. *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 863–865, 551 N.E.2d 28, 29–30 (1990).

A number of courts have considered the coverage question raised here. Some of the "claims made" policies involved had language very similar to or exactly like the reporting language in the policy here. Most of these courts have interpreted the reporting requirement like we have. *See, e.g., City of Harrisburg*, 596 F.Supp. at 960–62 (insurer had no duty under "claims made" policy to defend city official in court action where official failed to report claim to insurer within policy period as required by policy); *Sletten v. St. Paul Fire & Marine Ins. Co.*, 161 Ariz. 595, 597–98, 780 P.2d 428, 430–31 (1989) (coverage not afforded under "claims made" medical malpractice policy when claim not reported to insurer until after coverage period had ended, even though insurer not prejudiced by late report) (reporting language verbatim to language in Jarasviroj's policy); *St. Paul Fire & Marine Ins. Co. v. Estate of Hunt*, 811 P.2d 432, 435 (Colo.App.1991) (physician's mental impairment did not excuse noncompliance with reporting provision of "claims made" medical malpractice policy; physician's duty to report claim [suit filed during policy period and notice thereof given after policy expired] to insurer was material condition precedent to coverage which was not excused by impossibility or impracticability) (reporting language verbatim to language in Jarasviroj's policy); *Gulf Ins. Co. v.*

*Dolan, Fertig & Curtis,* 433 So.2d 512, 514 (Fla.1983) (court may not require that an unambiguous "claims made" professional liability policy be subjected to a reasonable additional period beyond the termination date of the policy for reporting claims that arise late in the policy term; to do so would in effect rewrite the policy); *Breaux v. St. Paul Fire & Marine Ins. Co.,* 326 So.2d 891, 892 (La.App.1976) (plain intent of "claims reported" provision restricted insurer's liability to claims discovered and reported during policy period); *Chas. T. Main,* 406 Mass. at 865, 551 N.E.2d at 30 (requirement that report of claim be given to insurer in policy period in "claims made" policy is of essence in determining whether coverage exists); *Detroit Auto. Inter–Ins. Exch. v. Leonard Underwriters, Inc.,* 117 Mich.App. 300, 302–06, 323 N.W.2d 679, 681–82 (1982) ("claims made" policy unambiguously required report of claims to insurer during policy period in order to trigger coverage); *Zuckerman,* 100 N.J. at 318–21, 495 A.2d at 403–04 (attorney was sued during policy period of "claims made" policy but failed to report suit to insurer until ten months after policy expired; no coverage available because policy unambiguously required report of claim to insurer during policy period). *But see St. Paul Ins. Co. v. Armas,* 173 Ill.App.3d 669, 672–76, 123 Ill.Dec. 283, 285–87, 527 N.E.2d 921, 923–25 (1988) (court held reporting language verbatim to language in Jarasviroj's policy was ambiguous and therefore interpreted provision in favor of insured and held there was coverage); *St. Paul Fire & Marine Ins. Co. v. House,* 315 Md. 328, 554 A.2d 404, 406–10 (1989) (in 4–3 decision court held reporting language verbatim to language in Jarasviroj's policy was ambiguous and therefore interpreted provision in favor of insured and held there was coverage).

The Hasbroucks' reliance on *Lewis v. St. Paul Fire and Marine Insurance Company,* 452 N.W.2d 386 (Iowa 1990), is misplaced. There we were dealing with a "prior acts" coverage provision in a "claims made" legal malpractice policy. Under the prior acts coverage provision the insurer agreed to cover claims based on acts that occurred before the effective date of the policy. The policy provided coverage for such claims only if the insured (1) had no knowledge of the prior wrongful act on the effective date of the policy, nor (2) any reasonable way to foresee that a claim might be brought, and (3) the claim was reported to the insurer while the policy was in effect. *Id.* at 388. The issue was whether the attorney had knowledge of a prior wrongful act on the effective date of the policy or a reasonable way to foresee it. We agreed with the district court's summary judgment ruling that there was such knowledge and therefore there was no coverage. *Id.* at 388–89. We agree with St. Paul here that there never was an issue in *Lewis* about when a claim under the policy was first made.

What the Hasbroucks actually contend is that *Lewis* expanded the reporting requirement to allow notice of a claim to the insured as notice to the insurer. Contrary to this contention, *Lewis* limited coverage for claims to those which were *unknown* to the insured on the effective date of the policy.

■ C. *Constructive notice.* The Hasbroucks last contend that the filing of their petition with the clerk of court within the policy period constituted constructive notice to St. Paul and for this reason there was coverage. In rejecting a similar contention, one court said:

> [W]e reject [the insured's] contention that the newspaper articles of November 5, 1982, gave the insurer, through its [agent], constructive notice of the claim within the policy period. We think the notice contemplated by the [policy] is notice from an insured to the insurer that a claim allegedly covered under the policy has been made. A newspaper article written and published by strangers to the [policy], intended to be read by the general public, does not meet that requirement. Without some action by an insured, and especially in light of the policy language ..., the insurer would have no way of knowing that a claim for coverage was being made under its policy.

*City of Harrisburg,* 596 F.Supp. at 959–60.

We think this reasoning answers the Hasbroucks' contention. Jarasviroj's policy likewise contemplates that the insured will report to the insurer any claims allegedly cov-

ered by the policy. The filing of a lawsuit and service on the insured simply do not meet this requirement.

### IV. *Disposition.*

The policy unambiguously provides coverage only if (1) the claim is first made during the policy period *and* (2) the insured reports the claim to the insurer or its agent during such period. Because the undisputed facts show that Jarasviroj did not report the Hasbroucks' suit to St. Paul until after the policy had expired, there was no coverage. For this reason the district court properly sustained St. Paul's motion for summary judgment. Accordingly, we affirm.

**AFFIRMED.**