CALOCERINOS & SPINA CONSULTING ENGINEERS, P.C., and Continental Casualty Company, Plaintiff,

v.

PRUDENTIAL REINSURANCE COMPANY, Defendant.

MUESER–RUTLEDGE CONSULTING ENGINEERS, f/k/a Mueser, Wentworth, Johnston & DeSimone, Plaintiff,

v.

PRUDENTIAL REINSURANCE COMPANY, Defendant.

Nos. 92–CV–6508T, 93–CV–6055T.

United States District Court, W.D. New York.

July 8, 1994.

Paul J. Yesawich, III, Harris, Beach & Wilcox, Rochester, NY, for plaintiffs.

Vincent J. Vitkowsky, Steven C. Schwartz, Buchalter, Nemer, Fields & Younger, New York City, for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

Plaintiffs in these consolidated diversity actions brought suit seeking a declaration that they are covered under Prudential Reinsurance Policy PSL00001 ("the Policy"). Both plaintiffs and defendant have moved for summary judgment. For the reasons set forth below, I hold that neither plaintiff is entitled to coverage under the policy and therefore deny plaintiffs' motions for summary judgment. Defendant's motion for summary judgment, dismissing both complaints is granted.

### BACKGROUND

Calocerinos & Spina Consulting Engineers ("C & S") and Mueser–Rutledge Consulting Engineers ("Mueser") are suing Prudential Reinsurance ("Prudential") seeking a determination that they should be afforded under professional liability policy number PSL00001 ("the Policy"), issued on September 15, 1982. This Policy covered professional malpractice liability for the Combined Sewer Overflow Abatement Project ("CSOAP"), a major sewer system upgrade project for the City of Rochester. C & S is listed as a named insured under the prime design professionals policy endorsement and Mueser, Wentworth, Johnston & DeSimone (a direct predecessor of plaintiff Mueser–Rutledge) is listed as a sub design professional. LST Joint Venture ("LST")[1] and H & A of New York, Geotechnical Consultants ("H & A") are also listed as named insureds on the policy.

The policy period was originally to run for six years, between September 15, 1982 and September 15, 1988, and included a discovery endorsement (Endorsement # 3), which lasted three years beyond the policy's cancellation date. By later endorsement, and in

consideration for a return premium of $270,-490, the policy was cancelled effective September 15, 1985. The discovery endorsement was not cancelled, however, and went into effect on that date.

In January 1984, Iacobelli Construction Co., a tunneling contractor on the CSOAP, first notified C & S that it believed the conditions that it was encountering while tunnelling a portion of the project differed materially from those indicated by the bid documents. By May 1984, Iacobelli had demanded compensation under the contract for the additional expenses it had allegedly incurred. In December 1988, Iacobelli filed suit against C & S and others claiming that C & S had negligently designed the CSOAP and failed to discover and report excessive water flows in the tunnel drilling line. *Iacobelli Construction Co. v. County of Monroe, et al.,* 88–1398T —— F.3d —— (2d Cir.1994) (*"Iacobelli"*). C & S first notified Prudential of the suit on December 22, 1988 and demanded coverage. In February 1989, Prudential refused coverage to C & S, maintaining that its claim was not covered. In June 1992, H & A, LST, and Mueser were impleaded into *Iacobelli* and each promptly notified Prudential of the suit.

In July 1992, Prudential assumed the defense of both H & A and LST, although it has since reserved its rights while continuing to defend. Following Prudential's decision to defend, C & S renewed its demand for coverage and Mueser also demanded coverage. These actions followed Prudential's subsequent refusal of coverage to both plaintiffs. Because they involved common questions of fact and law, they were consolidated by stipulation and order in May 1993.

Plaintiff C & S amended its complaint in September 1993 to add Continental Casualty as a plaintiff. Continental is an insurer of C & S, and has provided a defense for C & S in *Iacobelli.* It claims that Prudential has the primary coverage obligation, however, and that Prudential must reimburse it for defense costs. Because Continental's rights derive

---

1. The full name of the joint venture, as listed on the endorsement is "Lozier Engineers, Seelye Stevenson Value & Knecht, Tonias Engineers, a joint venture".

from those of C & S, I refer to both as a single entity.

## JURISDICTION

The basis for jurisdiction in both actions is diversity pursuant to 28 U.S.C. § 1332. Both C & S and Mueser are citizens of New York, Continental is a citizen of Illinois, and Prudential is a citizen of Delaware and New Jersey. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201. The amount in controversy exceeds $50,000.

## MOTIONS FOR SUMMARY JUDGMENT

### 1. Standard for Summary Judgment

Both Plaintiffs and Defendants have moved for summary judgment. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). When a party that does not bear the burden of proof moves for summary judgment, it must show that no reasonable jury could find for the party with the burden of proof on at least one essential element of their claim, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party is not required to produce evidence showing an absence of a genuine issue of fact, even on issues on which the non-moving party bears the burden of proof, but rather "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. at 2554.

### 2. Coverage under the Policy

Defendant seeks dismissal of both complaints. It argues that the Policy was explicitly a "claims made" policy, and applies only to claims reported to Prudential during the policy period and the three-year discovery clause period which followed. Because the Policy was cancelled on September 15, 1985, it argues that the last date of coverage under the discovery clause was September 15, 1988. Therefore, because C & S did not report the claim to Prudential until December 1988 (after Iacobelli was filed), it has no obligation to provide coverage. For similar reasons, Prudential argues that it does not have a coverage obligation to Mueser because Mueser did not report its claim until May 1992.

Plaintiffs seek a declaration that they are covered under the policy. They argue that the discovery clause of the policy, when read in context, requires only that a claim be asserted against the insureds during the term of the policy, and that any claim be reported to Prudential promptly after they are sued. Therefore, both plaintiffs maintain that they are entitled to coverage because Iacobelli had given C & S and Mueser notice of its claim during the policy period, and because both plaintiffs gave notice of the suit to Prudential within days of being served with summonses.

The starting point for determining whether coverage is appropriate is the plain meaning of the language of the contract, taking the surrounding circumstances and the apparent purpose of the parties into consideration. Cable Science Corp. v. Rochdale Village, Inc., 920 F.2d 147 (2d Cir.1990). The language of the policy supports Prudential's position. Both Plaintiffs acknowledge that the Policy is expressly a "claims made" policy, as opposed to an "occurrence" policy. These two types of policies dominate professional liability insurance. Occurrence policies cover any occurrences during the policy period (regardless of the claim date, even if the claim is made after the policy has been cancelled), while claims made policies cover claims reported against the insured within the policy period (regardless of the occurrence date, and usually even if the occurrence may have preceded the policy period).

Claims made insurance has become popular in part because it benefits both the insurer and the insured. The insurer knows that there is a date after which it will not be responsible for claims. With this knowledge, the insurer is able to compute premiums with

greater certainty, because it can discount the risk of a claim filed long after the policy period has ended, with the attendant dangers of unexpected inflation, changes in application of law, and upward trends in jury awards. This greater certainty results in lower premiums for the insured.

■ The policy language defines a claim as, among other things, "a demand or request received by the *Insured*, whether written or oral, for *damages*, money or services arising out of an *occurrence* or alleged *occurrence*." (Policy Definitions at V[A], emphasis in original). Claims made is defined as a "*claim* that is reported to the Company during the policy period." (Policy Definitions at VI, emphasis in original). The "policy period" section of the insuring agreements states that "Coverage applies only to *claims made* ... during the policy period, if *claim* arises during the policy period and within the policy territory." (Emphasis in original).

Two other sections of the Policy are significant to Prudential's argument. First, Item 4 of "Declarations—Coverage Part" of the policy states:

> Professional Liability is on a *claims made* basis. Except as is provided under CONDITIONS I.A. Notice to the Company, such insurance applies to only those *claims* that are first reported to the Company during the policy period. Please read the policy carefully and discuss the coverage hereunder with your insurance agent, broker or representative.

(Emphasis in original). Second, Conditions I.A. states that:

> In the event of a *claim*, the *Insured* immediately shall give written notice to the Company, but in any event within 60 days after cancellation or non renewal of the policy, whichever occurs first. As respects *claims* which are reported subsequent to cancellation or non renewal, such *claims* must have arisen prior to such cancellation or non renewal.

(Emphasis in original).

Prudential argues that any liability for coverage ended three years after the policy's cancellation, pursuant to the discovery endorsement, which states that "coverage is provided for liability arising from professional acts, errors or omissions in connection with performance of the work performed by the Insured provided a claim is made against the Insured within three years of [the date of substantial completion or cancellation of the policy, whichever comes first]." Plaintiffs do not dispute that the policy was cancelled on September 15, 1985, making the last effective date of coverage under the discovery clause September 15, 1988. Prudential maintains that because C & S and Mueser did not report the claims to it until December 1988 and May 1992 respectively, they are not covered under the policy because no claim was made within the required period.

Plaintiffs argue that they are covered because Iacobelli had notified them in January 1984 that it alleged a differing site condition, and had specified its demand for compensation by May 1984. They maintain that this notice by Iacobelli constituted a claim under the policy, because it was "a demand or request received by the Insured, whether written or oral, for damages, money or services arising out of an occurrence or alleged occurrence." (Definitions, V[A] ). They then point to the discovery clause, arguing that they are subject to it because Iacobelli's "claim [was] made against the Insured within three years" of the date of the policy (and, in fact, was made against plaintiffs during the term of the policy).

Plaintiffs further contend that its notice of Iacobelli's claim was timely because it provided written notice to Prudential of the *Iacobelli* action within days of being served in December 1988 and Mueser did the same within days of being impleaded. For support, Plaintiffs point to Conditions I.A. of the policy, and argue that they come within the terms of that condition because they had reported the claim subsequent to cancellation, but the claim had arisen prior to cancellation or non-renewal. They maintain that the only reasonable reading of that language is that any suit be reported to Prudential within a reasonable time after they are served.

I agree with C & S and Mueser as to the first part of their argument: The notice that Iacobelli gave concerning a possible differing site condition in 1984 constituted a claim

under the terms of the policy, and fell squarely within the policy period. I disagree with the second part of their argument, however. C & S and Mueser are not covered by the policy because they did not report the claim (which transforms a "claim" into a "claim made" under the policy definitions) within either the policy period or the discovery period. The policy explicitly covers claims made, not claims, and the term "claims made" expressly includes a reporting requirement in its definition. Plaintiffs' reliance of the second sentence of Conditions I.A. of the policy is flawed as well because it takes the sentence out of its context. When read with the sentence that immediately precedes it, it makes clear that claims must be reported to the *insurer* within sixty days after the cancellation of the policy, as long as the claim had arisen during the term of the policy. Far from extending coverage as the plaintiffs claim, this clause operates to provide a limited, sixty-day window within which an insured may transform a claim arising within the policy period into a "claim made," but specifies that the insurer will not be responsible for claims reported outside that window, even if the insured was informed of the claim squarely within the policy period.

Plaintiffs also argue for their interpretation of the policy language on fairness grounds, positing that the only fair and rational interpretation of the policy language is that Prudential agreed to cover any "claim" that arose during the policy period or the discovery period, so long as *prompt notice of any lawsuit was given to the insurer whenever that claim ripened into a lawsuit.* They maintain that because the "claim" arose during the policy period and because they demanded coverage within days of being sued, they must be covered by the policy. This argument, however, is supported by neither the policy language nor the interpretations of claims-made insurance policies by courts.

In *Hasbrouck v. St. Paul Fire and Marine Ins. Co.,* 511 N.W.2d 364 (Iowa 1993), for example, the Supreme Court of Iowa addressed a case with similar facts. An insured doctor had claims made professional liability insurance coverage beginning September 23, 1985 and continuing until September 23, 1990, when it was cancelled. On August 31, 1990, a former patient filed a malpractice action against the doctor for alleged malpractice occurring in 1988. The doctor did not report the lawsuit to the insurer, but instead hired his own attorney, who answered the complaint on September 10, 1990. On December 6, 1990, this attorney first notified the insurer of the lawsuit and demanded coverage, which the insurer refused.

The Supreme Court of Iowa held that the insurer had no coverage obligation, noting that "an extension of the notice period in a 'claims made' policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *Id.,* 511 N.W.2d at 367. The Court thus applied the rule that the *date that a claim is reported* to the insurer is the determinative date for claims made policies. The Court, in its analysis, listed several decisions from various jurisdictions applying the same analysis to "claims made" policies.

Similarly, in *St. Paul Fire and Marine Insurance Company v. Hunt,* 811 P.2d 432 (Colo.Ct.App.1991), the Colorado Court of Appeals addressed whether the mental incapacity of an insured excused his failure to report a claim during the policy period of a claims-made policy. The Court held that it did not, reasoning that notice to the insurer constitutes the trigger for coverage in a claims made policy and that notice was therefore a material part of the agreement that and could not be excused. *Id.* at 435.

I agree with the reasoning of both *Hasbrouck* and *Hunt.* Plaintiffs are attempting to evade the essence of the "claims-made" policy by arguing that the policy only required prompt notice to the insurer after filing of the suit based upon a claim. Although Iacobelli's DSC demand in May 1984 constituted a "claim", C & S and Mueser are not covered because neither notified Prudential until after both the policy period and the discovery period had expired.

To construe the discovery clause to provide for open-ended coverage for any claims asserted against the insureds during the policy period or discovery period, but which went unreported until after the policy had expired

would transform this claims made policy into a quasi-occurrence policy, dramatically shifting the contracted risks. Prudential would be held responsible for any occurrence for which a claim was given to any insured during the policy period, regardless of when this ultimately ripened into an actual suit, or if the insured did not report the claim until several years after the policy period had ended. Such an interpretation would severely limit the usefulness of claims made coverage, because insurers would be subjected to similar risks as those present with occurrence coverage.

It would be contrary to both the language of the policy and the essence of the contract to allow the insureds to extend the term of their policy indefinitely by allowing them to demand coverage for any and all claims that arose during the policy period but that went unreported until after the period had lapsed.

### 3. Waiver/Estoppel Argument

■■■ Plaintiffs claim that because Prudential has provided a defense to two other named insureds under the policy (H & A and LST), Prudential should be held to have either waived its right to deny coverage to plaintiffs or be estopped from asserting that right. I disagree.

Plaintiffs argue that in supplying coverage to H & A and LST, Prudential waived its right to deny coverage to C & S or Mueser. Put differently, by providing coverage to H & A and LST, Prudential had intentionally relinquished a known right, *i.e.* the requirement that they be given written notice of the claim within the policy period, and therefore cannot now claim that defense.

The Plaintiffs' argument finds no support under New York law. In *Albert J. Schiff Associates, Inc. v. Flack,* 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980), the Court of Appeals, after discussing general principles of forfeiture, noted that

> [waiver] does not create coverage, for the underlying coverage must be subsisting if the forfeiture is to serve any purpose. So,

where the issue is the existence or nonexistence of coverage (*e.g.,* the insuring clause and exclusions), the doctrine of waiver is simply inapplicable.

Thus, only a *defense* to coverage may be waived, and the doctrine does not create coverage where there had been none. In this case, because the timing of notice is the *trigger* for coverage in a claims made policy and is thus material to the existence or nonexistence of coverage, the waiver doctrine cannot apply because it would go beyond merely extinguishing a defense to underlying coverage, and cause Prudential to extend coverage beyond the period for which the policy provides. Because waiver doctrine cannot *create* such a duty on the part of the insurer, it does not apply in this case.[2]

■■■ Alternatively, plaintiffs argue that, in providing coverage to H & A and LST, Prudential is estopped from denying coverage to C & S and Mueser. Prudential's response is that estoppel does not apply because C & S and Mueser have never been prejudiced by Prudential's providing a defense to H & A and LST. They maintain that both companies are merely fortunate beneficiaries of Prudential's mistaken extension of coverage. C & S and Mueser had been told from the beginning that they were not covered, and thus were not prejudiced. Prudential maintains that H & A and LST are no more entitled to coverage than are C & S and Mueser, but because Prudential had actually began to defend H & A and LST, they could be estopped from denying coverage at this time.

I agree with Prudential. Their apparent mistake with regard to only two named insureds under the policy should not effectively impose responsibility upon Prudential to incur additional defense costs and possible liability as to the entire group of insureds, even though all were insured under the same policy. While it may be unfair that H & A and LST benefit from Prudential's error, C & S and Mueser may not, because they fail to demonstrate any conduct by Prudential that

---

**2.** In this light, plaintiffs' reliance on *Phico v. Providers Insurance Company,* 888 F.2d 663 (10th Cir.1989) is misplaced. In that case, the Tenth Circuit held that oral notice and conduct by the insurer consistent with notice having been given gave rise to the application of the doctrine of implied waiver. Under that doctrine, absent a showing of prejudice, the insurer would be held liable under the policy. The case is plainly distinguishable, however, because *Phico* dealt with defective timely notice while the present case involves no notice.

led them also to believe that either or both would be covered. Because they have not shown the necessary prejudice for estoppel to apply, plaintiffs' argument must also fail. *Hartford Insurance Group v. Mello,* 81 A.D.2d 577, 578, 437 N.Y.S.2d 433 (2d Dept 1981) ("An estoppel will lie only if the insured has been prejudiced by the insurer's actions.")

### CONCLUSION

Both plaintiffs in this action were covered by "claims made" insurance which, unfortunately, ran out before they "made their claim" to Prudential. Because the plaintiffs did not give notice of Iacobelli's claim to Prudential within the policy period or the discovery period, they were not covered under that policy. Finally, the doctrines of waiver and estoppel cannot extend the period of the policy to provide for coverage beyond the bargained-for period. Defendant Prudential's motion for summary judgment is granted, Plaintiffs' cross-motions for summary judgment are denied, and the actions are dismissed.

ALL OF THE ABOVE IS SO OR-DERED.