**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant–Movant.**

**No. 93–1317.**

Supreme Court of Iowa.

March 29, 1995.

Mark McCormick, Roger T. Stetson and Margaret C. Callahan of Belin Harris Lamson McCormick A Professional Corporation, Des Moines, and Raymond J. Jast of Peterson & Ross, Chicago, IL, for defendant-movant.

G. Mark Rice and Chip Lowe of Adams & Howe, P.C., Des Moines, and Ann S. DuRoss, Colleen B. Bombardier and Maria Beatrice Valdez, Washington, DC, for plaintiff.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

The certified question is whether, under a liability insurance policy, coverage exists for claims made after expiration of the coverage period when notice of the occurrence or potential claim was given only during the discovery period. Our answer is that no such coverage is provided.

November 1, 1983, defendant American Casualty Co. of Reading, Pennsylvania, assumed an officers' liability policy in force as to Mineola State Bank in Mills County (the bank). The policy period extended from February 21, 1982, to February 21, 1985. It was, at least according to its original coverage, a "claims made" policy. American Casualty agreed to pay certain losses "if, during the policy period, any claim or claims are made." The claims at issue were not made during the February 1982 to February 1985 policy period.

Just before the policy was to expire, pursuant to a right given under section 2B, the policy's discovery clause, the bank exercised its right to purchase

> an extension of the coverage granted by this policy with respect to any claim or claims which shall be made against the Directors or Officers during the period of twelve calendar months [following termination of the original policy period].

It is clear that only the period for making a claim was extended.

During the discovery period American Casualty received notice from the bank and—following the bank's failure—also from defendant Federal Deposit Insurance Corporation [FDIC] of *potential* claims against three of the bank's directors and officers. No suits were brought against any of the officers until August 1989, four years after expiration of both the policy period and the discovery period. FDIC eventually obtained judgments against the bank's three officers and thereafter brought suit on the policy in federal court. The question was certified to us upon an application filed in that court.

■ I. FDIC urges at the threshold that we lack jurisdiction to entertain the certified question. As will be seen, the question itself has been the subject of conflicting decisions

among the federal circuit courts. Mainly on the basis of precedent in the eighth circuit, precedent that supports its position, FDIC unsuccessfully resisted certification of the question. It is argued that the federal court would be bound, not by any answer we might decide upon, but by what FDIC sees as controlling precedent in the federal eighth circuit. FDIC focuses on language taken from Iowa Code section 684A.1 (1995), the statute that establishes the procedure by which we accept certified questions.

The statute states we may answer questions "which may be determinative of the cause then pending in the certifying court." The point now made is really the same one FDIC lost in federal court in its unsuccessful resistance to certification. It is said we lack jurisdiction, or at least lack the power to answer, because it is thought our answer could not determine the case in federal court as federal precedent alone is determinative.

We think our certification statute is not so limiting. Cases might be imagined in which we should reject purely academic or extraneous questions, but this is surely not such a case. Our answer to the certified question indeed may be determinative of the cause in federal court, a matter we of course leave entirely up to that jurisdiction. Our answer will only be a statement of Iowa common law. We emphatically decline to advise the federal court on whether to apply it, but we think we have jurisdiction and that it would be inappropriate for us to refuse to respond to the certified question. We therefore turn to the question presented.

■■■ II. The beginning point is clearly established by the case of *Hasbrouck v. St. Paul Fire & Marine Insurance Co.*, 511 N.W.2d 364 (Iowa 1993). A "claims made" policy provides coverage only for claims made during the coverage period provided by the policy. *Id.* at 366. Because no claim was made during the policy period, FDIC's position must be rejected unless coverage can be demanded on the basis of some other provisions in the policy. FDIC contends other provisions in the policy do expand the claims-made limitation of coverage, seizing especially on expansive language in the notice provi-

sion of the policy, clauses 6A and 6B which provide:

### SECTION 6. NOTICE OF CLAIMS

(A) If during the policy period the Bank or the Directors or Officers shall: (i) receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers, or any of them, responsible for a Wrongful Act; or (ii) become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers, or any of them, for a Wrongful Act; and shall, during such period give written notice thereof to the Insurer as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the policy year in which such notice was given.

(B) The Bank or the Directors or Officers shall, as a condition precedent to their right under this policy, give the Insurer notice in writing as soon as practicable of any claims made and shall give the Insurer such information in cooperation as it may reasonably require.

FDIC thinks this language enlarges upon the description of a claim made, expanding it beyond the limitations of our holding in *Hasbrouck*. FDIC is driven to this position; the bank's and FDIC's notices of "potential" claims would otherwise obviously fall outside any rational definition of an actual claim. An insured surely cannot unilaterally extend a claims-made coverage period by the simple expedient of announcing the existence of potential claims.

American Casualty argues that the quoted language from the extended coverage provision has nothing to do with the nature of the policy's foundational coverage, that it remains a "claims-made" policy subject to the principles we outlined in *Hasbrouck*. Under this view there is no coverage because, although the notice of claims provision might be met, it remains that only "claims-made" coverage was extended. And no claim was

made during the period the insurer was at risk.

American Casualty contends the extended coverage provision is clear, unambiguous, and has a clear and unambiguous purpose: for an additional (but substantially reduced) premium the insured purchased an additional year of insurance protection against the claims made during the coverage period. That is, the extended coverage provisions go only so far as to treat claims made during the extended year as if they had been made during the policy period.

■ III. In urging its interpretation, FDIC places great emphasis on the rubric that, where an insurance policy is reasonably susceptible to two interpretations so as to raise an ambiguity, it will be construed in favor of the insured. There is of course no question about the rubric. *Farm Bureau Mut. Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 108 (Iowa 1981). But an ambiguity does not exist merely because the parties cannot agree on a provision's meaning. *Essex Ins. Co. v. Fieldhouse,* 506 N.W.2d 772, 776 (Iowa 1993). We are not committed to the view that an ambiguity necessarily arises merely because conflicting case authority can be found on an interpretation. *Cincinnati Ins. v. Hopkins Sporting Goods,* 522 N.W.2d 837, 840 (Iowa 1994).

■ We apply an objective test to determine the existence of an ambiguity; the question is whether genuine uncertainty exists as to which one of two or more meanings is the proper one. *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.,* 475 N.W.2d 607, 618–19 (Iowa 1991). We also think that where, as here, insurance coverage is extended at a substantially reduced rate, courts should hesitate to assume the parties intended coverage to be as broad as that initially purchased at a higher rate.

Under these principles of construction we see no ambiguity that would deter us from applying our *Hasbrouck* holding. The policy remained a claims-made policy because the other provisions FDIC cites as altering the policy's nature were carefully crafted not to do so. This was the view taken in an identical policy in *American Casualty Co. v. FDIC*

*(Wilkinson),* 958 F.2d 324, 328 (10th Cir. 1992) (hereinafter *Wilkinson* ):

Clause 6(A) provides for coverage of claims subsequently made if notice is given "of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers." However, the initial phrase of Clause 6(A) contains the language, "If *during the policy period* "; a subsequent phrase in the clause states that notice of an "occurrence" must be given "during such period." Therefore, notice of an occurrence may trigger coverage for claims subsequently made only if that notice is given "during the policy period."

The holding was reaffirmed in *American Casualty Co. v. FDIC (Casper),* 999 F.2d 480, 482 (10th Cir.1993). *See also Winkler v. National Union Fire Ins. Co.,* 930 F.2d 1364, 1366 (9th Cir.1991) (same). Its logic seems inescapable to us.

FDIC relies mainly on *McCuen v. American Casualty Co.,* 946 F.2d 1401 (8th Cir. 1991), in support of its position. We have carefully read *McCuen* but can only conclude, with respect to that court, that the *Wilkinson* holding is a correct statement of Iowa common law.

We have also considered FDIC's similar argument that the other endorsements in the policy have the effect of altering the scope of coverage. We find these arguments even more subject to the same deficiency as that we perceive in FDIC's challenge under the discovery clause; no one of the endorsements, or any combination of them, purports to convert the claims-made nature of the policy into some other kind of coverage. Nor do they purport to extend the notice of claims provision, clause 6A, to the discovery period.

The FDIC points to the "limit of liability" endorsement as evidencing expansive coverage during the discovery period. That endorsement amends clause 1C of the policy by stating that the discovery period is "part of and not in addition to the last Policy Year." That endorsement also amends clause 4B of the policy by again stating that the last policy *year* includes the extended coverage granted under the discovery clause. Con-

trary to the FDIC's position, these amendments do not make the discovery period part of the policy *period.* That is because the policy clearly uses the terms "policy period" and "policy year" to mean different things.

The declarations page of the policy states that the "policy period" is February 21, 1982, to February 21, 1985, the original *three* years the policy is in effect. In contrast, clause 1C defines the term "policy year" as "the period of *one* year following the effective date and hour of this policy or any anniversary thereof." (Emphasis added.) The term "policy year" is then used in section 4 to explain the limits of liability in effect during each policy year. The "limit of liability" endorsement upon which the FDIC relies merely has the effect of combining the discovery period with the last policy year for purposes of determining the limits available under the policy. This endorsement neither expressly nor impliedly amends the notice of claims provision of the policy or the policy definition of "policy period."

The second endorsement cited by the FDIC is the one added to the policy when the insured purchases the extended coverage under the discovery clause. It merely states that "the coverage granted by this Policy" is extended for twelve months. This endorsement does not purport to change the policy definition of the term "policy period" nor does it purport to amend the notice of claims provision. To the contrary, this endorsement specifically states that "[a]ll other provisions of the policy remain unchanged." As we have previously discussed, the "coverage granted" by this policy extends only to claims made during the policy period or the discovery period and to notice of claims given during the policy period, but not the discovery period.

The bank purchased discovery period coverage at a substantially reduced premium. Discovery period coverage is simply not as broad as coverage provided during the policy period. That is because no provision of the policy allows coverage for claims for which the insured merely gives notice during the discovery period. Only claims made during the discovery period are included in the extended coverage. Because the bank pur-

chased only an extension of a claims-made policy, and because no claim was made within the prescribed period, no coverage was provided by the policy under the circumstances recited.

**CERTIFIED QUESTION ANSWERED.**