Order, Supreme Court, New York County (Charles E. Ramos, J.), entered February 22, 2012, which granted plaintiffs motion for summary judgment and denied defendant’s cross motion for summary judgment, unanimously reversed, on the law, without costs, plaintiffs motion denied, and defendant’s cross motion granted to the extent of declaring that defendant was not obli *656 gated to provide coverage to Roger A. Giuliani for two underlying actions (the Twomey action and the Bergmann action) and therefore is not obligated to reimburse plaintiff for payments made on Giuliani’s behalf in those actions.
Plaintiff insurer seeks to hold defendant insurer liable for claims it covered on behalf of their mutual insured, nonparty Roger A. Giuliani, Esq. Giuliani had engaged in a mass market mail campaign targeting senior citizens for estate planning legal services. Once the offer for legal services was accepted, Giuliani also offered to refer his clients to financial services representatives. Following the referrals, four clients became the victim of theft and fraud by the financial services representatives.
Each victim filed suit against Giuliani and the financial services representatives, alleging against Giuliani legal malpractice based on his failure to oversee the representatives. Two victims filed suit during the professional liability policy period covered by defendant, and two filed suit during the period covered by plaintiff (the Twomey and Bergmann actions). Giuliani also tendered the defense of the latter two to defendant, which denied coverage based on the claims being made outside the policy period.
Plaintiff settled those claims and then commenced this action, claiming that under defendant’s “claims-made” policy, the latter claims were the “same and/or related” to the first two claims and that defendant should have provided coverage to Giuliani and therefore should reimburse it. The motion court agreed, finding that because the victims’ relationship with Giuliani and the financial services professionals originated with the mass mailing campaign, the claims were related. We disagree.
A claims-made policy is designed to protect the policyholder during the life of the policy upon “notice to the carrier within the policy period” (American Home Assur. Co. v Abrams, 69 F Supp 2d 339, 346 [D Conn 1999]). The policy provides “the distinct advantage for the insurer of providing certainty that, when the policy period ends without a claim having been made, the insurer will be exposed to no further liability” (id.). This certainty permits an insurer, in calculating premiums, to “discount the risk of a claim [being] filed long after the policy period has ended, with the attendant dangers of unexpected inflation, changes in application of law, and upward trends in jury awards,” and to pass those savings on to the insured in the form of lower premiums (Calocerinos & Spina Consulting Engrs., P.C. v Prudential Reins. Co., 856 F Supp 775, 777-778 [WD NY 1994]).
*657 Moreover, courts interpreting “same or related” claims provisions in the context of lawyer’s professional liability policies have declined to find that the claims were the same or related where an attorney has provided separate services to multiple clients (see e.g. Chicago Ins. Co. v Lappin, 58 Mass App Ct 769, 781-782, 792 NE2d 1018, 1028 [2003], lv denied 440 Mass 1105, 798 NE2d 286 [2003]). Here, there are substantial differences between the victims, including the amounts of their claims and the fact that the financial services professional who allegedly committed the fraud was not the same in each circumstance. Accordingly, the claims are not the same or related.
Concur— Andrias, J.E, Saxe, DeGrasse, Richter and Gische, JJ.