# IN THE SUPREME COURT OF IOWA

No. 07–0958

Filed April 9, 2010

**FARM BUREAU LIFE INSURANCE CO.,**

Appellant,

vs.

**CHUBB CUSTOM INSURANCE CO., FEDERAL INSURANCE CO.,** and **GREAT NORTHERN INSURANCE CO.,**

Appellees.

Appeal from the Iowa District Court for Polk County, Artis I. Reis, Judge.

An insured appeals from a summary judgment entered in favor of its insurers. **AFFIRMED.**

Jason T. Madden and Megan M. Althoff Wolfe of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, and James A. Pugh of Morain, Burlingame & Pugh, P.L.C., West Des Moines, for appellant.

Jeff H. Jeffries of Hopkins & Huebner, P.C., Des Moines, and Janet R. Davis and Julie L. Trester of Meckler Bulger & Tilson LLP, Chicago, Illinois, for appellees.

**HECHT, Justice.**

Applicants for life insurance coverage sued Farm Bureau Life Insurance Company (Farm Bureau) alleging negligence and breach of fiduciary duty. After settling the applicants' claims, Farm Bureau sued its insurers and its insurance broker claiming entitlement to reimbursement for the costs incurred in the settlement. Farm Bureau appeals from the district court's entry of summary judgment in favor of the insurers. We affirm.

### I. Factual and Procedural Background.

**A. The Underlying Tort Claim.** John and Mary Smith[1] applied for life insurance through Farm Bureau in October 1999. Tests of the Smiths' blood samples revealed both were infected with the Human Immunodeficiency Virus (HIV). Farm Bureau sent a letter to the Smiths on November 29, 1999, advising them that their applications were denied "due to the blood profile results" and requesting authorization to disclose the results to their physician(s). The Smiths did not grant the requested authorization, and they did not discover their HIV status until approximately two years later.

After discovering their illnesses, the Smiths filed suit in the Wyoming Federal District Court on June 14, 2002, against Farm Bureau and other individuals involved in the analysis of the blood samples. In their original complaint, the Smiths alleged Farm Bureau was negligent in (1) failing to report the HIV-positive status to the State of Wyoming; (2) failing, in violation of Wyoming common law, to report the HIV-positive results to them; and (3) failing to inform them before their blood

---

[1]As information pertaining to communicable and infectious diseases is generally confidential, *see, e.g.,* Iowa Code chapters 139A and 141A (2009), the court uses pseudonyms in this case.

was drawn that Farm Bureau would not tell them if the blood tests were positive for HIV.[2]

Farm Bureau filed a motion for summary judgment on December 27, 2002. The federal district court granted the motion, concluding Farm Bureau owed no legal duty to disclose the test results to the Smiths. The Smiths appealed, and the United States Court of Appeals for the Tenth Circuit filed its decision on February 9, 2005, reversing and remanding the case to the district court for trial. After amending their complaint in May 2005 to allege a breach of fiduciary duty and to claim punitive damages, the Smiths settled their claims against Farm Bureau.

**B.    The Policies Insuring Farm Bureau.**    Farm Bureau maintained several liability insurance policies during the events described above.

1. *Insurance Company Professional Liability (ICPL) policies.*  Farm Bureau was the insured under an ICPL policy issued by Chubb Custom Insurance Group (Chubb) from February 15, 1998, to February 15, 2001, and a series of similar policies issued annually by Federal Insurance Company (Federal) for the period from February 15, 2002, through February 15, 2006. These policies provided coverage for "Loss . . . as a result of any Claim first made against [Farm Bureau] during the Policy Period . . . arising out of any Wrongful Act" committed by Farm Bureau while performing or failing to perform "Insurance Services" or "Financial Services." A "claim" was defined in the policies as, among other things, a "written demand for monetary damages" or a "civil proceeding commenced by the service of a complaint or similar pleading." "As a

---

[2]The complaint alleged that Mary Smith was diagnosed with AIDS in July 2001, and that her husband was soon thereafter rendered totally disabled by the virus that causes AIDS.

condition precedent" to coverage, the ICPL policies required Farm Bureau to give the insurers written notice of any claim "as soon as practicable, but in no event later than ninety (90) days after the termination of the Policy Period."

2. *Financial Institutions (FI) policies.* Farm Bureau was also insured under an FI policy issued by Great Northern Insurance Company (Great Northern) in effect from February 15, 1998, to February 15, 2001. This policy provided general liability coverage for "bodily injury" caused by an "occurrence." An "occurrence" was defined in the policy as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy contained an "Insurance and Related Operations Exclusion" for "bodily injury . . . arising out of, or directly or indirectly" related to (1) "any obligation . . . or failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise, with respect to any . . . contract . . . of insurance . . . including any applications" and (2) "advising, reporting or making recommendations, or the failure to do any of the foregoing, in the insured's capacity as an insurance company."

3. *Commercial Umbrella General Liability (CU) policy.* Farm Bureau was further insured under a CU policy issued by Federal and in effect during the period from February 15, 1999, to February 15, 2000.[3] The coverage provided by this policy was expressly limited by the terms and

---

[3]Under Coverage A (Excess Follow Form Liability Insurance), Farm Bureau was insured against losses in excess of the limits of the FI policy arising from an "injury or offense" occurring during the policy period. Unless otherwise specified, the terms, conditions, and exclusions under the FI policy also controlled and limited the coverage under Coverage A of Federal's CU policy. The umbrella policy also included Coverage B (Umbrella Liability Insurance) which covered damages Farm Bureau became obligated to pay "because of bodily injury . . . during the Policy Period . . . caused by an occurrence." Like the FI policy, the CU policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

conditions of the FI policy in the absence of CU policy provisions to the contrary. An endorsement to the policy included a "Financial Institution–Activities Exclusion" that mirrored the "Insurance and Related Operations Exclusion" within the FI policy referenced above.

**C. District Court Proceedings.** After settling the lawsuit with the Smiths, Farm Bureau filed suit in the Iowa District Court for Polk County alleging contract claims against its insurers, Chubb, Federal, and Great Northern.[4]

The insurers moved for summary judgment. The district court, concluding the insurers owed Farm Bureau no coverage under the policies, granted the motion. The court held no coverage was owed by Chubb or Federal under the ICPL policies because Farm Bureau failed to give the insurers timely notice of the Smiths' claims. The court further held no coverage was owed by Great Northern and Federal under the FI and CU coverages because (1) the claims against Farm Bureau were not occasioned by an "occurrence" as that term is defined in the policies, and (2) the Insurance and Related Operations Exclusion in the FI policy and the Financial Institution–Activities Exclusion in the CU policy excluded coverage. Farm Bureau appealed.

**II. Scope of Review.**

The parameters of our review of summary judgment rulings are well established. "We review rulings on summary judgment motions for the correction of errors of law." *Swainston v. Am. Family Mut. Ins. Co.*, 774 N.W.2d 478, 481 (Iowa 2009). "To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that

---

[4]Farm Bureau's petition also stated a claim against its insurance broker, Holmes Murphy & Associates, Inc. The claim against Holmes Murphy is not a subject of this appeal.

party to a particular result under controlling law." *Interstate Power Co. v. Ins. Co. of N. Am.,* 603 N.W.2d 751, 756 (Iowa 2000).

When no extrinsic evidence is offered on the meaning of language in a policy, "the interpretation and construction of an insurance policy are questions of law for the court." *Lee v. Grinnell Mut. Reins. Co.,* 646 N.W.2d 403, 406 (Iowa 2002). "[W]e adhere to the rule 'that the intent of the parties must control'" when construing insurance contracts. *Swainston,* 774 N.W.2d at 481 (quoting *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.,* 475 N.W.2d 607, 618 (Iowa 1991)). Except in cases of ambiguity, the intent of the parties is determined by what the policy says. *A.Y. McDonald Indus.,* 475 N.W.2d at 618.

### III. Discussion.

Farm Bureau contends the district court erred in concluding (1) no coverage exists under the ICPL policies because Farm Bureau failed to give timely notice of the claims against it, and (2) no coverage exists under the FI and CU policies because Farm Bureau failed to establish an "occurrence" and because the "Insurance and Related Operations Exclusion" and the "Financial Institution–Activities Exclusion" apply under the circumstances of this case. We will address these contentions separately.

**A. Coverage Under the ICPL Policies.** As we have noted, Chubb provided ICPL coverage to Farm Bureau from February 15, 1998, through February 15, 2001. Thereafter Farm Bureau purchased such coverage from Federal from February 15, 2002, through February 15, 2006, through a series of policies issued annually. The parties agree that each of these policies was a claims-made professional liability policy providing coverage for losses resulting from claims first made against Farm Bureau during the policy period.

It is uncontroverted that a claim was first made by the Smiths for purposes of this coverage no later than July of 2002 when the summons and complaint filed in the Wyoming Federal District Court were served on Farm Bureau. Thus, the claim in question was first made after the ICPL policy issued by Chubb had expired but while the policy issued by Federal for the term of February 15, 2002, to February 15, 2003, was in effect.

The ICPL policy for the period commencing February 15, 2002, specifically provided "as a condition precedent" to coverage, Farm Bureau must give Federal written notice of claims. The policy expressly required the written notice be given to Federal at its home office claims department located at 15 Mountain View Road, Warren, New Jersey, "as soon as practicable, but in no event later than ninety (90) days after the termination of the Policy Period." As the insured under the policy in question, Farm Bureau bears the burden of showing it satisfied this prerequisite to coverage. *Henschel v. Hawkeye-Sec. Ins. Co.*, 178 N.W.2d 409, 417 (Iowa 1970).

The record establishes Farm Bureau waited until February 11, 2003, to notify its insurance broker, Holmes Murphy, of the Smiths' claims. Holmes Murphy did not notify Federal of the claim until June 2005, more than two years after the relevant ICPL policy had expired.

The district court concluded in its summary judgment ruling that because the policy at issue is a "claims-made" policy, strict compliance with notice provisions is required. We agree. We have previously considered the sufficiency of notice to an insurer under a "claims-made" policy and discussed the key differences between a "claims-made" policy and an "occurrence" policy. *Hasbrouck v. St. Paul Fire & Marine Ins. Co.*, 511 N.W.2d 364, 366–67 (Iowa 1993).

[A] "claims-made" policy provides coverage for any errors, including those made before the effective date of the policy, as long as a claim is made within the policy period. In contrast, [an] "occurrence" policy provides coverage for any acts or omissions that arise during the policy period, regardless of when claims are made.

*Id.* at 366 (citations omitted). While both types of policies present benefits and drawbacks to both insureds and insurers, the two key benefits of a "claims-made" policy for the insured are lower premiums and coverage for acts or omissions occurring before the effective date of the policy. *Id.* at 367. The benefit for the insurer is that there is no open-ended "tail" after the ending date of the policy. *Id.* at 366. The insurer, confident that no claims will occur after the termination of the policy, is able to

"underwrite a risk and compute premiums with greater certainty. The insurer can establish his reserves without having to consider the possibilities of inflation beyond the policy period, upward-spiralling jury awards, or later changes in the definition and application of negligence."

*Id.* (quoting Note, *The "Claims Made" Dilemma in Professional Liability Insurance,* 22 UCLA L. Rev. 925, 928 (1975)).

In *Hasbrouck,* as in this case, the insured did not give notice to the insurer within the time prescribed by the contract, and we found the late notice was insufficient. *Id.* at 368. While we acknowledged the harsh result sometimes resulting from strict enforcement of notice-of-claim policy provisions, we concluded the purposes and characteristics of a claims-made policy necessitated strict compliance with notice requirements. *Id.*

Farm Bureau concedes it did not strictly comply with the notice requirement of the ICPL policy. Instead, Farm Bureau asserts it *substantially* complied with the policy's notice requirement by notifying Federal's agent, Holmes Murphy. Citing the terms of the agency

agreement between Holmes Murphy and Federal, Farm Bureau notes it was Holmes Murphy's responsibility to "report all losses and claims promptly, and provide relevant loss and claim information pertaining to coverages placed with [Federal] to [Federal's] nearest loss and claim office, or authorized representative." Noting that Federal had accepted notices of claims from Holmes Murphy on other occasions, Farm Bureau contends it substantially complied with its contractual obligation to notify Federal by notifying Holmes Murphy. Farm Bureau's substantial compliance argument is unavailing. As we have already noted, it was Farm Bureau's contractual obligation to strictly, not merely substantially, comply with the notice-of-claim provisions of the claims-made ICPL policy.[5]

Farm Bureau further contends, in the alternative, that a failure to comply with the notice requirement should be excused either because Federal was not prejudiced by the delay of notice or because Federal waived its right to timely actual notice. We disagree. Exceptions to the requirement of strict compliance with notice-of-claim provisions in claims-made policies are not favored because they "would defeat the fundamental concept on which 'claims made' policies are premised." *Hasbrouck,* 511 N.W.2d at 368. A prejudice analysis is therefore not appropriate in this case. *See* 22 Eric Mills Holmes, *Appleman on Insurance* 2d § 139.8, at 368–74 (2003) (noting that "[c]ourts strictly

---

[5]We note that even if the policy in question had not been a claims-made policy requiring strict compliance with its notice-of-claim provisions, it is unlikely that Farm Bureau could establish substantial compliance under the circumstances presented here. "[A] notice condition in an insurance contract is one of the basic and essential provisions of the contract and is of the essence of the agreement." *Met-Coil Sys. Corp. v. Columbia Cas. Co.,* 524 N.W.2d 650, 655 (Iowa 1994). The ICPL policies issued by Federal expressly required notice of any claim be given at its claims department office in New Jersey. Our decision in *Met-Coil* stands for the proposition that Farm Bureau cannot ignore this express condition precedent and rely upon notices of claims given to an agent of Federal. *Met-Coil,* 524 N.W.2d at 656.

interpret notice provisions in claims-made policies" and discussing how courts have declined to consider whether the insurer was prejudiced by the late notice). Accordingly, we conclude the district court correctly determined Farm Bureau failed to satisfy the condition precedent of timely notice.

In support of its waiver argument, Farm Bureau relies on affidavits given by two of its corporate counsel as evidence tending to establish Federal had on other occasions received and accepted notice from Holmes Murphy without objection. Notably absent from the affidavits, however, is any assertion or evidence that on any of these other occasions Federal received actual notice of a claim from Holmes Murphy more than ninety days after expiration of the relevant policy period. Evidence tending to prove Federal had on other occasions accepted without objection from Holmes Murphy timely notices of claims is not probative of Farm Bureau's claim that Federal waived its right under the contract to object to untimely notices. Under the circumstances, we conclude Farm Bureau has failed to generate a genuine issue of fact on the question of whether Federal waived or excused any failure to comply with the notice-of-claim requirement.

Farm Bureau further contends that if its notice to Holmes Murphy in 2003 was unavailing, the policy's written notice requirement was satisfied when Farm Bureau notified Holmes Murphy of the Smiths' "new" claims in June 2005 after the Smiths amended their complaint to assert fiduciary duty and punitive damage theories against Farm Bureau. This contention was soundly rejected by the district court because the Smiths' claims were first made against Farm Bureau during the term of the policy period commencing February 15, 2002. As discussed above, Farm Bureau's obligation under the policy was to give notice of the claim

to Federal "as soon as practicable, but in no event later than ninety (90) days after the termination of the Policy Period" which ended in February 2003. The Smiths' amendment of their complaint in 2005 did not constitute a new claim under the policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 342 (5th Cir. 2002) (holding an amendment of a complaint did not constitute a new or separate "claim" apart from the one stated in the original complaint). Accordingly, we find no error in the district court's resolution of this issue.

**B.** **Coverage Under the FI and CU Policies.** The FI and CU policies excluded coverage for bodily injury arising out of or related to "the failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise, with respect to any . . . contract . . . of insurance . . . including any applications." The policies also excluded coverage for claims against Farm Bureau arising out of or related to "advising, reporting or making recommendations, or the failure to do any of the foregoing," in its capacity as an insurance company. The district court concluded these policy provisions excluded coverage because the Smiths' claims alleged Farm Bureau breached duties directly related to an application for life insurance. Insurers relying on exclusions from coverage have the burden to prove their applicability. *State Farm Auto. Ins. Co. v. Malcolm*, 259 N.W.2d 833, 835 (Iowa 1977). When an insurer has "affirmatively expressed coverage through broad promises, [it] assumes a duty to define any limitations or exclusionary clause in clear and explicit terms." *Id.*

Farm Bureau claims the exclusions relied on by Great Northern in the FI policy and by Federal in the CU policy are ambiguous because at least two interpretations of the clauses—one narrow and the other broad—are possible. Under the narrow interpretation favored by Farm

Bureau, the exclusions should reach only those matters "peculiar to the insurance industry" and matters that are part of Farm Bureau's "core insurance function." Under a very broad and substantially strained alternative interpretation described by Farm Bureau, "the exclusion[s] could be read to exclude any and all types of claims from insurance coverage, and, consequently . . . provide absolutely no coverage to the insured for anything." Citing our decision in *First Newton National Bank v. General Casualty Co. of Wis.*, 426 N.W.2d 618 (Iowa 1988), Farm Bureau asserts this court should find the exclusions are ambiguous and adopt a narrow interpretation confining the exclusions to only those matters that are "peculiar to the insurance industry."

We believe *First Newton* is distinguishable from this case in important respects and therefore not helpful to Farm Bureau's argument. Two farm mortgagors sued the First Newton National Bank alleging fraud, negligent misrepresentation, and violations of securities laws. *Id.* at 621. The bank filed a declaratory judgment action against its liability insurance carriers who asserted no coverage was owed. *Id.* at 622. One of the carriers based its denial of coverage for the negligent misrepresentation claim on an umbrella policy amendatory endorsement excluding coverage for

> "claims arising out of error or omission or a mistake committed or alleged to have been committed by or on behalf of the insured in the conduct of any of the insured's business activities or the rendering of or failure to render any professional service."

*Id.* at 627. After concluding the language of the exclusion was ambiguous insofar as it could be interpreted to include or exclude liability insurance coverage for the bank's negligence, we interpreted it literally and determined coverage existed for the bank's negligent acts. *Id.* at 628–29. Strictly construing the exclusion against the insurer, we

concluded the insurer had not clearly and explicitly drawn its policy to exclude coverage for the bank's negligence.[6]  *Id.* at 629.

The exclusions in the FI and CU policies in the case now before the court are, in contrast to the exclusionary policy language in *First Newton,* clearly and explicitly drawn to preclude coverage for the acts and omissions that form the basis for the Smiths' claims against Farm Bureau.  The duty owed by Farm Bureau to the Smiths arose as a consequence of the insurer-applicant relationship.  The blood test which generated evidence of the Smiths' HIV-positive status was undertaken in furtherance of Farm Bureau's need to evaluate the actuarial risk it was being asked to underwrite in the performance of its core function as a life insurance company.  The duty to disclose sensitive health information arose only because Farm Bureau had established, while serving in its role as an insurance company, a relationship with the Smiths.  The exclusions clearly and expressly barred coverage for Farm Bureau's failure to discharge any obligation or duty with respect to any application for insurance.  The same exclusions preclude coverage arising from Farm Bureau's failure to discharge a duty to advise or report in its capacity as an insurance company.  Finding no ambiguity in these exclusionary terms, we need not turn to our rules governing interpretation of contracts.  We conclude the district court correctly concluded the plain language of the FI and CU policies excludes coverage for Farm Bureau's liability to the Smiths.

Farm Bureau next contends that the exclusions are unenforceable because they are unconscionable.  In reviewing claims of

---

[6]Noting the court's objective in construing insurance contracts is to "ascertain what the insured as a reasonable person would understand the policy to mean, rather than what the insurer actually intended," we rejected the notion that "a reasonable person would understand the words 'error,' 'omission,' and 'mistake' to include the concept of 'negligence.'" *First Newton,* 426 N.W.2d at 628–29.

unconscionability, we "examine the factors of assent, unfair surprise, notice, disparity of bargaining power and substantive unfairness." *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa 1975). Citing *C & J Fertilizer* and Iowa Code section 554.2302(2), Farm Bureau contends it is inappropriate at the summary judgment stage to resolve this issue because it has not had a reasonable opportunity to present evidence as to the insurance contract's commercial setting, purpose, and effect. We disagree. If evidence existed tending to prove the setting, purpose, or effect of the policy exclusions were unconscionable, Farm Bureau had a reasonable opportunity to present it in its resistance to the motion for summary judgment. We find no evidence in the summary judgment record generating a fact question on the issue of unconscionability.

Farm Bureau further contends the exclusions should not be enforced because they are inconsistent with its reasonable expectations. This court has previously concluded the doctrine of reasonable expectations is inapplicable if " '(1) an ordinary layperson would not misunderstand the policy's coverage as to this occurrence, and (2) there were no other circumstances attributable to the insurer at the time the policy was negotiated and issued that would foster coverage expectations.' " *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 50 (Iowa 2003) (quoting *Zaragoza v. W. Bend Mut. Ins. Co.*, 549 N.W.2d 510, 515 (Iowa 1996)).

Given the clarity of the exclusions in question, we believe the district court correctly concluded a reasonable person could not have understood coverage would exist for the Smiths' claims. Farm Bureau understandably makes no claim that the exclusions are bizarre, as it could not reasonably have expected the general liability policy to provide

coverage for errors and omissions made in the handling of applications for insurance. Coverage for such errors and omissions, if any, was to have been provided under the ICPL policy, not the general liability policy.

Farm Bureau further contends the exclusions "render the coverage provided under the FI and CU policies illusory" and eliminate the dominant purpose of the coverages when interpreted as they were by the district court. Great Northern and Federal dispute this contention, asserting under the district court's interpretation of the exclusions, coverage remains for "a host of conduct (including Farm Bureau's failure to maintain sidewalks in its capacity as a property owner)." We are not persuaded on this record that the coverage is so narrowed by the exclusions as to become illusory. Furthermore, as the exclusions were clear and explicit in their terms and therefore comprehensible to a reasonable purchaser of insurance—especially one with the insurance industry sophistication of Farm Bureau—the lack of coverage under the FI and CU policies for claims of the sort asserted by the Smiths was evident.

**IV. Conclusion**.

The district court correctly concluded coverage under the ICPL policy for the claims made by the Smiths against Farm Bureau failed because timely notice of the claims was not given to Federal as required by the policy. Unambiguous exclusions also bar coverage under the FI and CU policies for the Smiths' claims. Accordingly, we affirm the district court's summary judgment ruling.[7]

**AFFIRMED**.

All justices concur except Appel, J., who takes no part.

---

[7]Having concluded coverage is barred under all of the policies for the reasons stated in our opinion, we do not address other grounds asserted by the insurers and relied upon by the district court in support of the summary judgment ruling.