# IN THE SUPREME COURT OF IOWA

No. 09–0040

Filed October 29, 2010

**THE TRAVELERS INDEMNITY COMPANY,**

Appellant,

vs.

**D.J. FRANZEN, INC.,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Workers' compensation assigned risk insurer seeks further review of court of appeals' decision affirming district court's summary judgment ruling for insured on insurer's claim for additional premiums after reclassification of insured's workers. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

CeCelia C. Ibson of Ibson Law Firm, Des Moines, for appellant.

Stanley J. Thompson of Davis Brown Law Firm, Des Moines, for appellee.

**BAKER, Justice**.

The Travelers Indemnity Company (Travelers), a workers' compensation assigned risk insurer, seeks further review of the court of appeals' decision affirming the district court's summary judgment ruling for the insured on Travelers' claim for payment of additional premiums as a result of Travelers' reclassification of the insured's workers as employees. Travelers asserts that the court of appeals erred in (1) determining Travelers could not raise the doctrine of exhaustion of administrative remedies to bar the insured from presenting a defense to Travelers' suit and (2) determining the employment status of the insured's workers, arguing the court of appeals' decision conflicts with case law supporting the administrative resolution of the underlying premium rate dispute. We hold the administrative exhaustion doctrine bars the insured from raising a defense to Travelers' claim. Accordingly, the decision of the court of appeals is vacated, and the district court judgment reversed.

## I. Background Facts and Proceedings.

In September 2003, D.J. Franzen, Inc. (Franzen), an over-the-road trucking company, applied for workers' compensation insurance through the State of Iowa's assigned risk plan. Iowa's assigned risk plan is a statutorily created program that matches insurance providers with employers who are unable to obtain workers' compensation insurance on the open market. *See* Iowa Code § 515A.15 (2003)[1] (outlining Iowa's assigned risk plan). Under Iowa law, employers are required to carry workers' compensation insurance for certain employees. *See id.* § 87.14A ("An employer subject to this chapter and chapters 85, 85A, 85B, and 86

---

[1]The legislature has made several nonrelevant changes to some of the applicable provisions. Unless otherwise noted all references are to the 2003 Iowa Code.

shall not engage in business without first obtaining insurance covering compensation benefits or obtaining relief from insurance as provided in this chapter . . . .").

The National Council on Compensation Insurance, Inc. (NCCI) has been licensed as an approved rating organization in Iowa. *See id.* § 515A.6 (providing authority for organizations to apply to the insurance commissioner of Iowa to become licensed rating organizations for specific types of insurance). NCCI administers Iowa's assigned risk plan. *See id.* § 515A.15B ("An agreement among licensed insurers to offer workers' compensation insurance for applicants unable to procure workers' compensation insurance through ordinary methods shall be administered by a rating organization licensed under this chapter."). NCCI selected Travelers to be Franzen's workers' compensation insurance carrier.

Travelers' contract with Franzen offered insurance coverage for one year, starting September 15, 2003. At the time Travelers offered Franzen the coverage, Travelers calculated Franzen's deposit premium to be $1775. This figure was computed using figures Franzen had provided on its application to the assigned risk plan. On this application, Franzen was required to identify its total number of employees, its estimated annual payroll, and the class code of each employee that needed to be covered under the policy. The cost of the insurance plan varies based on the covered employees' class code and total payroll. Franzen listed seven clerical office employees with an estimated annual payroll of $230,000. Franzen did not list drivers on its application because it considered its drivers to be owner-operators, not employees.

As the administrator of Iowa's assigned risk plan, NCCI prepares reports for the insurers participating in the plan. These reports contain

information concerning the insured's workers' compensation coverage and claims for three years prior to the date of the report. NCCI prepared a report for Travelers, revealing that in the previous three years Franzen carried workers' compensation insurance for its drivers in addition to its clerical employees. After receiving this report and discovering that Franzen owned Hartland Lease Inc., a truck lease company, a Travelers' underwriter became concerned with the status of Franzen's drivers.

The underwriter for Travelers, Joseph Pinto, attempted to perform a preliminary audit of Franzen's employment practices, but Franzen was allegedly uncooperative. Travelers claims that Franzen refused to give Travelers' auditors access to any documentation regarding the company's relationship with its drivers. As a result, Travelers sent Franzen a letter stating that Franzen's policy would be cancelled on January 14, 2004. The letter stated that the coverage would not be reinstated until Franzen cooperated with the preliminary audit. Franzen then provided copies of contracts that stated the drivers were in fact owner-operators and did not need to be covered by the policy.

After reviewing the sample contract between Franzen and its drivers, Pinto declared that "any trucker signing these documents would be excluded from coverage under our policy." Thus, Travelers would consider any driver who had signed a contract to be an owner-operator, but all other drivers would be deemed employees and included in the workers' compensation policy. Travelers, however, determined that it needed to perform a second audit in early 2004. After performing this second audit, which included a review of Franzen's payroll documents for drivers, Travelers determined that only eight of Franzen's drivers were owner-operators, but the rest of the drivers were employees and should

be included under the insurance policy. This reclassification of drivers significantly increased Franzen's premium for the policy.

On April 16, 2004, Travelers sent Franzen a premium adjustment notice showing that the company's total premium had increased to $580,601. Franzen refused to pay the increased premium, insisting it had no employee drivers, only owner-operators that did not need to be covered under the policy. Travelers refused to revise its audit. Travelers, on several occasions, informed Franzen that if the company wished to appeal the premium determination it must file a written request with the NCCI. Franzen did not appeal the determination, nor did the company pay the additional premium. The policy was cancelled on June 4, 2004. After cancelling the policy, Travelers again adjusted Franzen's premium. The adjusted premium for the pre-cancellation term of the policy was $552,436.

In June 2007, Travelers filed a petition seeking judgment against Franzen for the increased premium. Franzen filed a motion for summary judgment, arguing that its drivers were independent contractors and should not have been included in the insurance policy. Travelers filed a resistance to Franzen's motion and a cross-motion for summary judgment. Franzen also sought to strike Travelers' cross-motion as untimely. After a hearing on the motions, the district court denied Travelers' motion for summary judgment and granted Franzen's motion. The court did not address the motion to strike the cross-motion.

Travelers appealed and argued that as a matter of law, Travelers alone was authorized to determine all matters related to the calculation of premiums; the majority of Franzen's drivers were correctly determined to be employees; and Franzen's failure to appeal Travelers' decision to

NCCI constitutes a failure to exhaust administrative remedies and bars Franzen's defense of any and all claims.

The court of appeals determined Franzen did not need to exhaust its administrative remedies to defend Travelers' claims, and Travelers did not generate a fact question as to whether the drivers at issue were employees or independent contractors. The court of appeals affirmed the district court's grant of Franzen's motion for summary judgment.

Travelers filed an application for further review with this court, which we accepted.

## II. Scope of Review.

The scope of review on a district court's grant of summary judgment is well established. We review rulings on motions for summary judgment for the correction of errors at law. *Farm Bureau Life Ins. Co. v. Chubb Custom Ins. Co.*, 780 N.W.2d 735, 739 (Iowa 2010). A grant of summary judgment is only appropriate when the " 'moving party [has] affirmatively establish[ed] the existence of undisputed facts entitling that party to a particular result under controlling law.' " *Id.* (quoting *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999)). In determining whether this standard has been met, the record must be viewed in the light most favorable to the nonmoving party. *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 45 (Iowa 1999).

> When no extrinsic evidence is offered on the meaning of language in a policy, "the interpretation and construction of an insurance policy are questions of law for the court." "[W]e adhere to the rule 'that the intent of the parties must control' " when construing insurance contracts. Except in cases of ambiguity, the intent of the parties is determined by what the policy says.

*Farm Bureau Life Ins. Co.*, 780 N.W.2d at 739 (quoting *Lee v. Grinnell Mut. Reins. Co.*, 646 N.W.2d 403, 406 (Iowa 2002) (first quote); *Swainston*

*v. Am. Family Mut. Ins. Co.*, 774 N.W.2d 478, 481 (Iowa 2009) (second quote)). "We review questions of statutory construction for the correction of errors at law." *Zimmer v. Vander Waal*, 780 N.W.2d 730, 733 (Iowa 2010).

### III. Discussion and Analysis.

**A. Failure to Exhaust Administrative Remedies.** Travelers first claim of error is that the court of appeals erred in determining Travelers could not use the doctrine of exhaustion of administrative remedies to bar Franzen from presenting a defense in a suit for damages. Travelers appears to be making two separate arguments for why the district court erred in this determination.

First, Travelers argues that the language of the insurance contract signed by Franzen incorporated the entirety of the NCCI Basic Manual's policies and procedures into the contract, and the dispute resolution section of the Manual requires exhaustion of NCCI's offered administrative procedures.

Section IX of the Manual outlines NCCI's dispute resolution procedures. The pertinent provisions of this section provide:

> Any person affected by the operation of the Plan including, but not limited to, participating companies, insureds . . . and assigned carriers, who may have a dispute with respect to any aspect of the Plan . . . may seek a review of the matter by the Plan Administrator by setting forth in writing with particularity the nature of the dispute, the parties to the dispute, the relief sought, and the basis thereof. . . .
>
> Appeals from employers and insurers on Plan matters . . . shall be within the jurisdiction of the mechanism established to handle such appeals under the applicable rating law.

While the language of this section does provide the insured with an administrative remedy to challenge the provider's rate determinations,

there is nothing in this section that makes exhaustion of this remedy mandatory.

Further, we are unable to find any language within Travelers' and Franzen's insurance contract that incorporates the entirety of the NCCI Basic Manual's policies and procedures into the contract. At two separate locations in the contract the contract states that "[t]he premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans." The NCCI Manual contains specific sections with the titles "Premium Basis and Payroll Allocation," "Rules," and "Rating Definitions and Application of Premium Elements." It is these Manual sections that are incorporated into Franzen's contract, not the section outlining NCCI's dispute resolution procedures. We find that the language of the insurance contract signed by Franzen did not incorporate NCCI's dispute resolution procedures into the contract. Further, even if the dispute resolution section of the Manual had been incorporated into the contract, there is no language in that section making exhaustion of NCCI's offered administrative procedure mandatory.

Alternatively, Travelers argues that exhaustion of NCCI's administrative remedy was required by statute and case law. Travelers asserts that under Iowa Code section 515A.9, use of the administrative procedure offered by NCCI is required. This Code section provides:

> Every rating organization and every insurer which makes its own rates shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by the person's authorized representative, on the person's written request to review the manner in which such rating system has been applied in connection with the insurance afforded the person. If the rating organization or insurer fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if the

> application had been rejected. Any party affected by the action of such rating organization or such insurer on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after a hearing held upon not less than ten days' written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action.

Iowa Code § 515A.9.

As a threshold matter, we must determine if section 515A.9 applies to the dispute at issue here, premium disputes. Section 515A.9 provides that Travelers and NCCI have the ability to set its own rates. "Rates" and "rating systems" refer to overall rates applicable to classes of insurance based on

> past and prospective loss experience within and outside this state; to the conflagration and catastrophe hazards, to a reasonable margin for underwriting profit and contingencies, to dividends, savings, or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members, or subscribers, to past and prospective expenses both countrywide and those specially applicable to this state, and to all other relevant factors within and outside this state.

*Id.* § 515A.3(1)(*b*); *see also* Iowa Admin. Code r. 191—60.4.

Pursuant to Travelers' policy, premiums are then determined based on "rates, rating plans, and classifications." Section 515A.9 authorizes dispute resolution procedures not only for both rates and rating systems but also for those "aggrieved by the application of its rating system." Iowa Code § 515A.9. Since premiums are derived from rates and rating plans, entities paying premiums "are aggrieved by the application" of the rating system. Therefore, section 515A.9 provides a procedure for premium disputes. Next, we turn to whether section 515A.9 requires administrative exhaustion.

Administrative exhaustion is only imposed when two conditions are present: (1) "an administrative remedy must exist for the claimed

wrong," and (2) "the statutes must expressly or impliedly require that remedy to be exhausted before resort to the courts." *N. River Ins. Co. v. Iowa Div. of Ins.*, 501 N.W.2d 542, 545 (Iowa 1993). We address each requirement in turn.

NCCI is a rating agency organization licensed to do business in the State of Iowa under chapter 515A. However, this Court has noted that "[t]he legislature has delegated to the commissioner of insurance authority to determine whether rates charged by companies providing workers' compensation insurance are excessive." *Travelers Indem. Co. v. Comm'r of Ins.*, 767 N.W.2d 646, 650 (Iowa 2009) (citing Iowa Code section 515A.1 for the proposition that chapter 515A's purpose "is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive"). The Commissioner of Insurance has exercised this statutory authority by delegating a portion of its charged task to NCCI. *See* Iowa Code § 515A.15B (stating Iowa's assigned risk plan for workers' compensation insurance "shall be administered by a rating organization licensed under this chapter"). NCCI is acting, at least when offering these dispute resolution procedures, as an arm of the Commissioner of Insurance and in an administrative manner.

Furthermore, the statutory scheme spells out a remedial administrative process for premium disputes. Iowa Code section 515A.9 clearly outlines the process to be followed and allows for appeals of NCCI decisions to the commissioner. *Id.* § 515A.9 ("Any party affected by the action of such rating organization or such insurer on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after a hearing held upon not less than ten days' written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action."). These procedures are coupled with

Iowa Code section 515A.18, which provides that judicial review of the commissioner's decisions must be done in accordance with Iowa Code chapter 17A. *See id.* § 515A.18(3) ("Judicial review of the actions of the commissioner may be sought in accordance with the terms of the Iowa administrative procedure Act."). Because NCCI is acting pursuant to the commissioner's delegation of authority and the statutory scheme expresses a clear administrative remedial process an administrative remedy exists for the claimed wrong in this case.

With respect to the second requirement, we must determine whether Iowa Code section 515A.9 expressly or implicitly requires administrative exhaustion. Travelers has not provided us with any statutory language that expressly requires NCCI's dispute resolution procedures be exhausted before the parties may resort to the courts, nor have we found any.

Iowa Code section 515A.9 states that rating organizations licensed under chapter 515A, "shall provide . . . reasonable means whereby any person aggrieved by the application of its rating system may be heard." The statute does not explicitly require that the aggrieved individual utilize those means. There is also nothing in the administrative rules which requires parties to exhaust the dispute resolution procedures offered by NCCI before resorting to judicial review. *See generally* Iowa Admin. Code r. 191—60.4 (detailing the rate or manual filing procedures). Finally, the language contained in NCCI's Basic Manual is permissive. It states that any aggrieved party "*may* seek a review of the matter by the Plan Administrator." (Emphasis added.) Since section 515A.9 does not expressly require administrative exhaustion we consider whether the section's remedial scheme impliedly requires exhaustion.

We look to the intent of the legislature in determining whether to imply a requirement that administrative remedies be exhausted. *Keokuk County v. H.B.,* 593 N.W.2d 118, 125 (1999).

> We consider the objectives the legislature sought to accomplish and construe the statute to best affect legislative intent. Where no explicit statutory direction exists, we consider whether the exhaustion requirement would be consistent with the statutory scheme, so that any implied exhaustion requirement is tailored to fit the role the legislature assigned to the agency.

*Id.* (citation omitted).

We find the comprehensive nature of the statute's remedial scheme implies that section 515A.9 is mandatory. The section provides detailed procedures as well as means for an appeal to the commissioner of NCCI's determination. Iowa Code § 515A.9. In addition, Iowa Code section 515A.18 specifically provides that "[j]udicial review of the actions of the commissioner may be sought in accordance with the terms of the Iowa administrative procedure Act, chapter 17A." The comprehensive statutory scheme suggests exhaustion is implied under section 515A.9.

The purposes of the exhaustion doctrine further support a finding that Franzen exhaust all available administrative remedies. The doctrine

> is a highly utilitarian principle of administrative law both as an expression of administrative autonomy and a rule of sound judicial administration. The agency has been legislatively created as an entity vested with its own powers and duties. It should be free to work out its own problems, and courts should not interfere with its work until the agency has completed its task.

*Pro Farmer Grain, Inc. v. Iowa Dep't of Agric. & Land Stewardship,* 427 N.W.2d 466, 469 (Iowa 1988). The exhaustion requirement is intended to honor agency expertise by mandating that most matters be handled within the agency. *See IES Utils. Inc. v. Iowa Dep't of Revenue & Fin.,* 545

N.W.2d 536, 538 (Iowa 1996). It is also intended to preserve judicial resources. *Id.*

> The exhaustion rule serves a legitimate state interest in requiring parties to exhaust administrative remedies before proceeding to court, thereby preventing an overworked court from considering issues and remedies that were available through administrative channels. It also encourages the use of more economical and less formal means of resolving disputes and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.

2 Am. Jur. 2d *Administrative Law* § 474, at 402 (2004).

Mandating that Franzen exhaust its available administrative remedies furthers these purposes. NCCI has expertise on how premiums for workers' compensation insurance should be calculated, as well as how an employee's status is determined. In addition, a determination by NCCI may have finally resolved this controversy—thus preserving judicial resources. The clear implication of this statutory scheme is that individuals must exhaust the administrative remedies provided for in Iowa Code chapter 515A before seeking review by the courts.

Franzen argues Travelers, as plaintiff, cannot use the exhaustion doctrine offensively to bar Franzen from raising a defense to Travelers' claim. Franzen cites attenuated authority for this position, and Travelers does not argue the issue. We find two Supreme Court cases arising in the Vietnam War and Selective Service System setting to be instructive. *See McGee v. United States*, 402 U.S. 479, 91 S. Ct. 1565, 29 L. Ed. 2d 47 (1971); *McKart v. United States*, 395 U.S. 185, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969). In these cases the Court considered whether the government could offensively use the exhaustion doctrine to bar the defendants from raising a defense to their respective criminal charges. In *McKart*, the defendant alleged he was exempt from service as a matter

of statutory construction, and in *McGee* the defendant sought to raise a conscientious objector defense; both defendants failed to exhaust these defenses during the Selective Service's administrative classification process. *McGee*, 402 U.S. at 489, 91 S. Ct. at 1571, 29 L. Ed. 2d at 56; *McKart*, 395 U.S. at 189–190, 193, 89 S. Ct. at 1660, 1662, 23 L. Ed. 2d at 201.

The Court weighed the interests of the defendants against the government's interests that underlie the exhaustion doctrine. *McGee*, 402 U.S. at 484–86, 91 S. Ct. at 1569–70, 29 L. Ed. 2d at 53–54; *McKart*, 395 U.S. at 198–99, 89 S. Ct. at 1665, 23 L. Ed. 2d at 205–06. The Court conceded "the harsh impact of the doctrine when it is invoked to bar any judicial review" of the defendants' claims. *McGee*, 402 U.S. at 484, 91 S. Ct. at 1569, 29 L. Ed. 2d at 53. Application of the exhaustion doctrine to the defendants would ensure criminal convictions against the defendants and bar them from raising potentially viable legal defenses. However, the Court noted several important government interests support the exhaustion doctrine such as permitting the development of an administrative record, utilizing agency expertise, and deterring deliberate flouting of the administrative process. *Id.* (citing *McKart*, 395 U.S. at 194–95, 89 S. Ct. at 1663, 23 L. Ed. 2d at 204).

In *McKart* the issue was one of pure statutory interpretation and the court concluded the government's interest in exhaustion did not outweigh the harsh burden imposed on the defendant because statutory interpretation does not require agency fact finding or expertise. *McKart*, 395 U.S. at 197–99, 89 S. Ct. at 1665, 23 L. Ed. 2d at 205–06. In *McGee*, however, the primary issue was whether the defendant was in fact a conscientious objector, an issue of fact. *McGee*, 402 U.S. at 490, 91 S. Ct. at 1571–72, 29 L. Ed. 2d at 56. The Court held the

government's interest in agency fact finding, agency expertise, and deterrence of deliberate refusal to participate in the administrative process outweighed the harm to the defendant. *Id.* at 489–91, 91 S. Ct. at 1571–72, 29 L. Ed. 2d at 56–57. The Court held the defendant in *McGee* could not argue he was a conscientious objector as a defense to his criminal charges. *Id.* at 491, 91 S. Ct. at 1572, 29 L. Ed. 2d at 57.

Using these balancing principles as a guide, we believe on these facts the policies that underlie the exhaustion doctrine require us to permit Travelers to offensively use the exhaustion doctrine. First, we believe the "harsh impact" faced by Franzen if it is barred from asserting its defenses is less than the impact imposed upon the defendant in *McGee*. *McGee* is a criminal case, whereas here only a money judgment is at issue. *Id.* at 480, 91 S. Ct. at 1567, 29 L. Ed. 2d at 51. We also find these facts implicate the governmental interests that support the exhaustion doctrine. The Commissioner of Insurance is charged with setting applicable rates and the commissioner and, at times through delegation, NCCI have the duty to resolve premium disputes. Franzen, by refusing to utilize available administrative remedies, has inhibited the opportunity for the input of agency expertise. Franzen also prevented the development of an administrative record despite Franzen's defense requiring a factual analysis. Finally, Franzen made a deliberate decision not to exercise its administrative remedies for at least three years despite being notified in writing at least twice of its right to appeal to NCCI. As the Supreme Court stated in *McGee*, "it is not fanciful to think that 'frequent and deliberate flouting of administrative processes' might occur if [Franzen] and others similarly situated were allowed to press their claims in court despite . . . failure to exhaust." *Id.* at 491, 91 S. Ct. at

1572, 29 L. Ed. 2d at 57 (quoting *McKart*, 395 U.S. at 195, 89 S. Ct. at 1663, 23 L. Ed. 2d at 204).

Thus we hold that Franzen was required to exhaust the remedy in section 515A.9 before asserting its defense in the courts. Franzen had the ability to contest both the rate and the employment status of its drivers. Having failed to do so, Franzen may not now litigate that which could have been dealt with three years before this action was commenced.

**B. Motions for Summary Judgment.** Because we hold that Franzen was required to exhaust its remedy before NCCI, it may not now contest either Travelers' determination that the drivers were employees or the premium charged. We need not address Franzen's motion to strike Travelers' motion for summary judgment for lack of timeliness. The district court summarily denied Franzen's motion. Franzen has not asserted the timeliness issue on appeal. It is therefore waived. *Pierce v. Staley*, 587 N.W.2d 484, 486 (Iowa 1998) ("When a party, in an appellate brief, fails to state, argue, or cite authority in support of an issue, the issue may be deemed waived.).

Therefore, it must be taken as undisputed that the drivers were employees and the appropriate premium was $550,661 which is computed by the amount of the adjusted premium of $552,436 less the $1775 previously paid. Because of this determination, the district court erred in granting Franzen's motion for summary judgment. It further erred in determining that the drivers were not employees. Travelers' cross-motion for summary judgment should have been granted and judgment entered accordingly.

**IV. Disposition.** We therefore vacate the decision of the court of appeals. We further reverse the decision of the district court granting

summary judgment to Franzen and remand with instructions to enter summary judgment in favor of Travelers in the amount of $550,661.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**